[This opinion has been published in *Ohio Official Reports* at 78 Ohio St.3d 103.]

MIAMI COUNTY BAR ASSOCIATION V. THOMPSON.

[Cite as *Miami Cty. Bar Assn. v. Thompson*, 1997-Ohio-101.]

*Attorneys at law—Misconduct—One-year suspension—Accepting employment*
*where professional judgment will be affected by own financial interest—*
*Entering into business transaction with client where lawyer's and client's*
*interests differ without full disclosure—Failing to decline employment*
*where professional judgment will be affected unless it is clear that*
*attorney can represent multiple clients and each consents after full*
*disclosure.*

(No. 96-1465—Submitted January 8, 1997—Decided April 2, 1997.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and
Discipline of the Supreme Court, No. 94-67.

_____

{¶ 1} On September 14, 1994, relator, Miami County Bar Association, filed a complaint charging respondent, Nathan A. Thompson of Troy, Ohio, Attorney Registration No. 0020056, with the violation of nine Disciplinary Rules of the Code of Professional Responsibility. After his motion to dismiss was denied, respondent filed an answer. On October 2 and 3, 1995, a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") heard the matter.

{¶ 2} On the basis of the evidence produced at that hearing, including a deposition of Thelma R. Dalton videotaped earlier, the panel found that respondent had represented Dalton from April 1990 until November 1993. In January 1992 Dalton, who was seeking a small business investment opportunity, was provided by respondent with information regarding a business to be started by Paul M. Yochum. Dalton authorized respondent to effect a series of loans to Yochum

totaling $80,000 through respondent's trust account. At the time of the loans, Dalton knew that respondent had once represented Yochum.

{¶ 3} Dalton wanted the loans to be evidenced by mortgage notes payable to Robert L. Shoemaker, a friend of Dalton's whom she later married, as a gift to Shoemaker and be secured by mortgages on Yochum's real property in favor of Shoemaker. At the time of the transaction, Yochum's real estate was worth between $85,000 and $110,000 and was already subject to first and second mortgages totaling $70,000. According to respondent, Dalton made the decisions with respect to each loan based on the information he gave her and knew at the outset that the loans would be undersecured.

{¶ 4} Although the loans were made and the notes and mortgages executed in February, April, May, June, and August 1992, respondent did not record the mortgages until February 1993, because of a threat of litigation against Shoemaker. In August 1992, respondent advised Dalton of his concern that Yochum might not be able to repay the loans and that no further money should be advanced.

{¶ 5} Yochum did not know the source of the loans, but did know that respondent would not represent him, and instead would represent Shoemaker and the lender in the loan transactions. Yochum also knew he would pay a fee for each loan to respondent in the nature of a documentation fee.

{¶ 6} Dalton said that she did not know that respondent was to receive a fee of ten percent to be taken from the proceeds of each loan made to Yochum; however, respondent stated that Dalton authorized the payment of such fees by Yochum up to $7,500 and knew the amount of each payment. Before Yochum filed for bankruptcy on May 17, 1993, respondent had received $3,300 from Yochum in fees and Shoemaker had received a total of $19,500 in principal and interest from Yochum.

{¶ 7} The panel concluded that respondent violated DR 5-101(A) (accepting employment where a lawyer's professional judgment will be affected by

his own financial interest), 5-104(A) (entering into a business transaction with a client where the lawyer's and client's interests differ without full disclosure), and 5-105(A) (failing to decline employment where his professional judgment will be affected unless it is clear he can represent multiple clients and each consents after full disclosure). The panel recommended that respondent be suspended from the practice of law for six months with the suspension stayed and respondent placed on probation for that time. The board adopted the findings, conclusions and recommendation of the panel. Both parties filed briefs in support of their objections to the report of the board.

———————————

*Dale G. Davis* and *James D. Utrecht*, for relator.

*Jack W. Skogstrom* and *David Greer*, for respondent.

———————————

***Per Curiam.***

{¶ 8} We accept the findings and conclusions of the board, but believe that a more stringent penalty is warranted. Respondent represented the lender in this case, but his arrangement with the parties enabled him to receive a fee from the borrower for each loan made by the lender. Despite the fact that the lender independently decided to make each loan, this arrangement put respondent in a position where he could profit by withholding information from or exercising influence on the lender.

{¶ 9} A lawyer should avoid even the appearance of impropriety and the implication that his professional judgment on behalf of a client could be affected by the lawyer's own interests. Respondent is therefore suspended for one year from the practice of law. Costs are taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.