[This decision has been published in *Ohio Official Reports* at 96 Ohio St.3d 424.]

STARK COUNTY BAR ASSOCIATION *v.* BUTTACAVOLI.

[Cite as *Stark Cty. Bar Assn. v. Buttacavoli*, 2002-Ohio-4743.]

*Attorneys at law—Misconduct—Six-month suspension with suspension stayed on condition—Providing both legal and financial planning to clients without fully disclosing financial interest in advice provided.*

(No. 2002-0349—Submitted June 26, 2002—Decided September 25, 2002.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 01-50.

_____

FRANCIS E. SWEENEY, SR., J.

{¶1} In an amended complaint filed on November 8, 2001, relator, Stark County Bar Association, charged respondent, Glen F. Buttacavoli of Massillon, Ohio, Attorney Registration No. 0024132, with violations of DR 5-101(A)(1) (absent full disclosure and consent, employment shall not be accepted if the exercise of professional judgment will be or reasonably may be affected by the lawyer's financial, business, property, or personal interest), 5-104(A) (absent full disclosure and consent, a lawyer shall not enter into a business transaction with a client if they have differing interests therein and the client expects the lawyer to exercise his professional judgment for the protection of the client) and 5-107(A)(1) (accepting compensation for legal services from one other than his client without full disclosure and consent) and (2) (accepting anything of value from another related to the representation or employment without full disclosure and consent). After the amended complaint was answered, the matter proceeded to a hearing before a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court.

**{¶2}** The evidence submitted by the parties established that respondent held himself out to the public as both a practicing attorney and a financial planner and consultant. At the times these claims arose, respondent was a registered representative of Allmerica Financial Group.

**{¶3}** In August 1999, Donald Bissell, a 65-year-old man with health concerns, scheduled an appointment with respondent to discuss his will and seek financial planning and investment advice. According to Bissell's requests, respondent prepared a will leaving Bissell's estate to the National Rifle Association ("NRA") and agreed to serve as Bissell's executor of the estate. Additionally, respondent drafted a power of attorney listing himself as the attorney in fact for Bissell. For these services, respondent billed Bissell approximately $200 to $250.

**{¶4}** Respondent advised Bissell to surrender a certificate of deposit, worth approximately $86,000, with a maturity date of 2003 and invest the funds in a variable annuity. Bissell was informed that the early surrender of the certificate of deposit would result in a penalty of $4,300. Bissell took respondent's recommendation and deposited approximately $82,000 to purchase the annuity. The estate, not the NRA, was named as beneficiary of the annuity. At the time, Bissell asked about respondent's commission and was told that the annuity company determined whether he would receive a commission. Although respondent received a $3,491.71 sales commission, respondent did not fully disclose to Bissell his own financial interest in the advice he gave. This conduct led to Count One of relator's complaint.

**{¶5}** Regarding Count Two, respondent was approached by Margaret Riffle, acting as the representative agent for her 101-year-old mother, Opal Lanham, now deceased. On Lanham's behalf, Riffle requested a living will and power of attorney. In addition, Riffle sought assistance for nursing home financial planning for Lanham, who had recently been admitted to a nursing home. Respondent prepared the legal documents and charged Riffle $100 for his work.

**{¶6}** At a second appointment, respondent met with Riffle and Lanham's other daughter, Shirley Flad, to further discuss Lanham's financial options. Respondent learned that Lanham had approximately $90,000 in an interest-bearing credit union account that was being used to pay for nursing home expenses. Respondent recommended that these funds be invested in an equity fund, the Oppenheimer Total Return Fund. Although respondent claimed that he had informed the women that this fund carried the risk of loss of principal, Riffle testified she had never been informed of this fact.

**{¶7}** Riffle and Flad, acting as Lanham's agents, invested approximately $80,000 in the Fund's Class A shares pursuant to respondent's advice. As required by securities laws, respondent provided a fund prospectus that defined all of the fees and charges paid by the customer. However, respondent did not separately inform Riffle or Flad that he would receive a commission on the sale of the investment vehicle. Despite the prospectus language, Riffle testified that she believed that the fund was a "front-load" fund with no commission charge. Respondent received approximately $3,000 in commissions.

**{¶8}** When Riffle received her first statement from Oppenheimer, she discovered that the initial investment of $80,000 was diminished by approximately $5,219.70 due to commissions and loss of principal. Riffle immediately contacted Oppenheimer and respondent to register her complaints and, as a result, the investment was reversed. Rear-loaded Class B shares in the fund were purchased. Again, according to Riffle, respondent failed to inform her that he would make a commission every time money was withdrawn from the fund. After several months, the value of the fund dropped from its original purchase price to $66,000.

**{¶9}** At the conclusion of relator's case, the panel dismissed the claims that respondent had violated DR 5-107(A)(1) and (2). However, at the close of all the evidence, the panel concluded that respondent had violated DR 5-101(A)(1) and 5-104(A). Specifically, the panel determined that the legal and financial advice was

part of an integrated transaction requiring full disclosure of respondent's financial interest in the investment transactions and informed consent by the clients based upon such full disclosure. Moreover, the panel found that in respondent's role as attorney, his legal advice could reasonably be affected by his financial interest in the investment advice he offered. The panel also believed that respondent's interest in selling the investment vehicles offered to his clients differed from their interests in securing the most financially favorable use of their funds, and his clients clearly expected the respondent to exercise his professional judgment for their protection.

{¶10} In mitigation, the panel considered the absence of any prior disciplinary action against respondent, respondent's cooperation in the disciplinary process, testimony of several character witnesses demonstrating respondent's good reputation in the community, and favorable accounts of respondent's competence and integrity. The panel also noted respondent's active participation in various groups and organizations, particularly the volunteer services he provides to the elderly and his involvement in elder-law activities. The panel found no evidence of chemical dependency or of dishonest or selfish motives in the advice he gave to his clients. The panel also considered that the clients had been fully compensated for their initial loss of investment and were placed in the financial positions they would have been in had they not made the recommended investments.

{¶11} In recommending a sanction for this misconduct, the panel considered *Toledo Bar Assn. v. Miller* (1970), 22 Ohio St.2d 7, 51 O.O.2d 4, 257 N.E.2d 376; *Bar Assn. of Greater Cleveland v. Nesbitt* (1982), 69 Ohio St.2d 108, 23 O.O.3d 157, 431 N.E.2d 323; *Dayton Bar Assn. v. Evans* (1985), 18 Ohio St.3d 300, 18 OBR 348, 480 N.E.2d 1118; and *Miami Cty. Bar Assn. v. Thompson* (1997), 78 Ohio St.3d 103, 676 N.E.2d 879.

{¶12} The panel recommended a six-month suspension, with all six months stayed on the condition of no additional disciplinary violations. The board adopted the findings of fact and conclusions of law. However, based upon its finding that

respondent abdicated his ethical responsibilities as a lawyer and the vulnerability of his victims, the board recommended that respondent be suspended for eighteen months with twelve months stayed.

{¶13} We adopt the board's findings and conclusions that respondent violated DR 5-101(A)(1) and 5-104(A). However, after thoroughly considering the evidence in the case, we adopt the panel's recommended sanction.

{¶14} Although our Disciplinary Rules do not prohibit an attorney from engaging in the dual professions of law and financial planning, the rules do require that an attorney providing both legal and financial advice must carefully separate these services and provide full disclosure as to his financial interest in the investment advice he provides. Informed consent by the clients must be obtained after full disclosure. Clearly, respondent failed to provide full disclosure to his clients concerning his financial interest in the investment recommendations.

{¶15} Here, both clients readily admitted that they had sought respondent's services as both an attorney and financial planner. The problem arose, however, because while respondent clearly billed these clients for his legal services, his additional compensation for selling the investments was not clearly explained to them. In fact, Riffle testified that respondent led her to believe that because her mother had attended the same church as respondent, respondent would not charge additional fees for the investment. Respondent admitted that he made a representation that he would not charge additional fees because of the church association. However, respondent testified that he meant that he would not charge for any general questions she may have had regarding the legal work performed or the investment made. Regarding Bissell, we find that the communication concerning respondent's commission on the annuity sold was misleading at best. When Bissell asked about respondent's fee, Bissell received a vague answer that compensation would come from the annuity issuer. Therefore, we find that ample evidence was submitted to find violations of DR 5-101(A)(1) and 5-104(A).

{¶16} We now turn to the question of the appropriate sanction for this misconduct. When imposing a sanction, several factors are considered. We consider the duties violated, the actual injury caused, the attorney's mental state, the existence of aggravating or mitigating circumstances, and sanctions imposed in similar cases. See *Disciplinary Counsel v. Evans* (2000), 89 Ohio St.3d 497, 501, 733 N.E.2d 609.

{¶17} Respondent testified that he truly believed that he acted in his clients' best interests. He was not dishonest or selfish. He has been an attorney since 1984 and has not been involved in prior disciplinary actions. He offered much mitigation evidence regarding his reputation and philanthropic nature. Moreover, there is no evidence of any aggravating circumstances that would cause us to increase the sanction to be imposed against respondent.

{¶18} Finally, we consider the cases relied upon by the panel. In *Toledo Bar Assn. v. Miller*, supra, 22 Ohio St.2d 7, 51 O.O.2d 4, 257 N.E.2d 376, the attorney was indefinitely suspended for misrepresenting his interest in an investment he recommended to his client and failing to disclose certain critical details. In *Bar Assn. of Greater Cleveland v. Nesbitt,* supra, 69 Ohio St.2d 108, 23 O.O.3d 157, 431 N.E.2d 323, the attorney received a one-year suspension for failing to disclose a finder's fee he received when he arranged for his client to lend money to a third party. In *Dayton Bar Assn. v. Evans*, supra, 18 Ohio St.3d 300, 18 OBR 348, 480 N.E.2d 1118, the attorney was indefinitely suspended for failing to disclose to the client his commissions in the purchase of privately traded stock and for other misconduct. In *Miami Cty. Bar Assn. v. Thompson,* supra, 78 Ohio St.3d 103, 676 N.E.2d 879, the attorney was suspended for one year for failing to disclose finder's fees he received when he referred his client to a small business investment. In all of these cases the attorneys' conduct was closer to active deceit and misrepresentation, thus justifying a more severe sanction. In contrast, here, the clients were well aware that respondent was engaged in the dual professions of law

and financial planning. Indeed, they sought his services in both capacities. Moreover, common sense dictates that compensation will be received on both services. However, because these professions are so closely connected, the clients could logically believe that their legal bill was the bill for *all* services.

**{¶19}** After reviewing these cases and the evidence, the panel determined that the appropriate sanction for respondent would be a six-month suspension, stayed with the condition of no more disciplinary violations. We agree with this recommendation.

**{¶20}** Accordingly, respondent is hereby suspended from the practice of law for a period of six months, with the suspension stayed on the condition that there be no additional disciplinary violations. Costs are taxed to respondent.

Judgment accordingly.

DOUGLAS, RESNICK, PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., concurs in judgment.

MOYER, C.J., dissents.

_____

David L. Dingwell and Richard S. Milligan, for relator.

Charles W. Kettlewell, for respondent.

_____