MAHONING COUNTY BAR ASSOCIATION *v.* BERNARD.

[Cite as *Mahoning Cty. Bar Assn. v. Bernard,*
98 Ohio St.3d 414, 2003-Ohio-1483.]

———

(No. 2002–2176—Submitted February 12, 2003—Decided April 9, 2003.)

**Per Curiam.**

{¶ 1}  On March 10, 1998, a client retained a law firm to handle her mother's personal-injury claim against an ambulance company.  Respondent, Elizabeth A. Bernard of Youngstown, Ohio, Attorney Registration No. 0040416, was assigned to handle the claim, and the firm began its investigation.

{¶ 2}  In May 1998, the client informed the firm that her mother had died. Respondent thereafter telephoned the client and advised her that she needed to hire an estate attorney.  Upon respondent's referral, the client retained an attorney for the probate of her mother's estate.

{¶ 3}  In November 1998, respondent provided the client with a draft copy of a demand letter to be sent to the ambulance company's insurance carrier.  In December 1998, respondent sent the insurance company the demand letter, specifying therein that the client had authorized her to settle the personal-injury claim for $50,000.  The client claims that she did not receive copies of either the November or December letters.

{¶ 4}  In May 1999, respondent filed a lawsuit on behalf of the client, in the client's capacity as administrator of her mother's estate, against the ambulance company in a court of common pleas.  In February 2000, upon representations by respondent and the opposing counsel, the common pleas court issued an entry in which it noted that the case had been "settled & dismissed" and that a detailed judgment entry would follow.  The amount of the settlement was $13,000, with the net amount of $8,817.30 due to the client.

{¶ 5}  After the insurance company forwarded a release and indemnity agreement and $13,000 settlement check to respondent, she requested that her legal assistant give the file to a law clerk to transfer to the estate attorney for probate. The law clerk did not recall seeing the file, which was later found on her desk after she had left the firm.  Respondent did not execute the release, and the check was never cashed.

{¶ 6}  During the course of respondent's representation, the client repeatedly attempted to contact respondent concerning the status of the case but was unable to talk to respondent directly or to obtain significant information about the case. The estate attorney also attempted on several occasions to reach respondent by phone about the status of the personal-injury case, but he was never able to speak with her.

{¶ 7} After the dismissal entry was filed, the client learned of the settlement from a co-worker, and she immediately called respondent's office. Respondent's legal assistant told the client that she would call her back when she located the file.

{¶ 8} In May 2001, due to respondent's failure to keep both him and the client apprised of the status of the personal-injury case despite their numerous requests, the estate attorney filed an action in probate court to have respondent explain the nature and status of the case. Following a probate court hearing at which the client testified that she did not want the settlement approved unless an independent personal-injury lawyer recommended it, the probate court denied a motion to approve the settlement. Respondent paid the costs of the probate hearing.

{¶ 9} Respondent then withdrew her representation of the client, and the client retained new counsel, who obtained the vacation of the dismissal of the personal-injury case. The client filed a legal malpractice claim and a grievance against respondent.

{¶ 10} Respondent fully cooperated with the investigation of the grievance by relator, Mahoning County Bar Association. On April 8, 2002, relator filed a complaint charging respondent with violating certain Disciplinary Rules. A panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") heard the matter upon the stipulated facts, exhibits, and testimony offered by the parties.

{¶ 11} The panel set forth findings of fact and concluded that respondent's conduct violated DR 6–101(A)(3) (neglecting an entrusted legal matter).

{¶ 12} In mitigation, respondent submitted letters from various individuals, praising her superior ethical character and competence as an attorney. At the hearing, relator's attorney noted that respondent has a very successful practice and that he had "had the pleasure of being on the opposite side of her and working with her."

{¶ 13} Respondent admitted that the delay in informing the client and the estate attorney about the status of the personal-injury case from the settlement until the probate court hearing resulted "entirely" from her own negligence and that she had "absolutely no explanation for that."

{¶ 14} Respondent further testified that she had instituted administrative changes at her law firm to prevent the recurrence of similar problems. The firm now records client messages in the case file and computer and provides for a system for the attorneys to monitor their cases following settlement. Respondent has also reduced her case load, which was around 300 cases at the time of the charges here.

{¶ 15} The panel recommended that respondent be publicly reprimanded. The board adopted the findings, conclusions, and recommendation of the panel and further recommended that the costs of the proceeding be taxed to respondent.

{¶ 16} We agree with the board's recommended sanction. To determine the appropriate sanction, we consider " 'the duties violated, the actual injury caused, the lawyer's mental state, the existence of aggravating or mitigating circumstances, and sanctions imposed in similar cases.' " *Disciplinary Counsel v. Connors*, 97 Ohio St.3d 479, 2002-Ohio-6722, 780 N.E.2d 567, ¶ 16, quoting *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16.

{¶ 17} Respondent violated her duty to her client, DR 6–101(A)(3), but her misconduct did not harm the client other than causing her considerable delay in pursuing her personal-injury case.

{¶ 18} There are also mitigating factors present. Respondent has no prior disciplinary record, and she has an admirable character and reputation as an attorney. See Sections 10(B)(2)(a) and (e) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD"). In addition, she lacked any dishonest or selfish motive, and she fully cooperated in the disciplinary investigation and proceeding. BCGD Reg. 10(B)(2)(b) and (d).

{¶ 19} In a comparable case, we publicly reprimanded an attorney who had violated DR 6–101(A)(3) where the violations did not result in financial harm to clients, the attorney lacked a prior disciplinary record, letters specified the professional competence of the attorney, the attorney accepted responsibility for the misconduct, and office procedures were enacted to prevent the recurrence of the misconduct. *Northwestern Ohio Bar Assn. v. Schnitkey* (2002), 94 Ohio St.3d 135, 136, 760 N.E.2d 825; cf. *Dayton Bar Assn. v. Engel* (2001), 93 Ohio St.3d 623, 625, 758 N.E.2d 178.

{¶ 20} Based on the foregoing, a public reprimand is an appropriate sanction for respondent's neglect of an entrusted legal matter. Respondent is hereby publicly reprimanded. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

---

David C. Comstock Jr. and Ronald E. Slipski, for relator.

Arnold & Caruso, Ltd., and James D. Caruso, for respondent.