**DISCIPLINARY COUNSEL *v*. CHAMBERS.**

**[Cite as *Disciplinary Counsel v. Chambers,***

**125 Ohio St.3d 414, 2010-Ohio-1809.]**

*Attorney misconduct, including neglecting an entrusted legal matter, failing to promptly deliver to client all funds the client is entitled to receive, and failing to cooperate in disciplinary investigation — One-year suspension with entire suspension stayed on conditions.*

(No. 2008-1991 — Submitted December 16, 2009 — Decided April 29, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 07-098.

_____

**Per Curiam**.

{¶ 1} Respondent, John Joseph Chambers of Fairview Park, Ohio, Attorney Registration No. 0064627, was admitted to the practice of law in Ohio in May 1995.

{¶ 2} The Board of Commissioners on Grievances and Discipline recommends that we suspend respondent's license to practice for a period of one year, stayed upon the conditions that he complete a three-year probationary period during which he remain subject to, and in compliance with, his Ohio Lawyers Assistance Program ("OLAP") contract, continue to be monitored by an appointed monitoring attorney, regularly attend Alcoholics Anonymous meetings, commit no further misconduct, and pay the costs of these proceedings. The board makes this recommendation based upon stipulations and findings that respondent neglected a legal matter entrusted to him, intentionally failed to carry out a contract of employment, failed to promptly pay or deliver to the client all funds that the client was entitled to receive, and refused to assist in a disciplinary

investigation. Additionally, the board found that although not stipulated by the parties, respondent engaged in conduct prejudicial to the administration of justice and adversely reflecting on his fitness to practice law, and intentionally failed to seek the lawful objectives of a client. We agree that respondent violated the former Code of Professional Responsibility and current Rules of Professional Conduct[1] as found by the board, and that a one-year suspension with the entire suspension conditionally stayed is appropriate.

**Procedural History**

{¶ 3}  Relator, Disciplinary Counsel, initially charged respondent with a single count of failure to cooperate with a disciplinary investigation of a grievance filed against him by Michael David Wilmore. See Gov.Bar R. V(4)(G) (no lawyer shall neglect or refuse to testify in a disciplinary investigation or hearing). In April 2008, relator amended its complaint to add a second count arising from a grievance filed by Thomas G. Stump and alleged that respondent violated Prof.Cond.R. 8.4(a) (no lawyer shall violate or attempt to violate the Ohio Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another), 8.4(d) (no lawyer shall engage in conduct that is prejudicial to the administration of justice), and 8.4(h) (no lawyer shall engage in any other conduct that adversely reflects on the lawyer's fitness to practice law), and Gov.Bar R. V(F)(G).

{¶ 4}  Respondent did not answer either complaint, and relator moved for a default judgment. The board referred the matter to a master commissioner, who prepared a report containing findings of fact and conclusions of law and recommending a one-year suspension with six months stayed upon the conditions that he successfully complete an approved anger-management program, complete

---

1. Relator charged respondent with misconduct pursuant to applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which supersede the Code of Professional Responsibility.

six months of monitored probation pursuant to Gov.Bar R. V(9), and pay the costs of the proceeding. The board adopted the master commissioner's report in its entirety.

{¶ 5} Both relator and respondent objected to the board's report. After hearing oral argument on those objections, we placed respondent on monitored probation pursuant to Gov.Bar R.V(9) and remanded the matter to the board for further consideration.

{¶ 6} On remand, relator filed a second amended complaint to add additional facts and allegations of misconduct with respect to respondent's handling of the Wilmore matter. The parties submitted stipulated facts and exhibits and a panel of board members made findings of fact and conclusions of law and recommended a one-year suspension stayed upon conditions. The board adopted the report, and the parties have not objected.

### Misconduct

*The Wilmore Grievance*

{¶ 7} In June or July 2005, Michael David Wilmore sought respondent's representation to seek early release from prison. In August 2005, respondent sent Wilmore a letter stating that he would not pursue the matter until he received his $2,500 fee. The letter further stated: "If you elect to pay my fees, I will promptly file the motion for judicial release we discussed and request that Judge Hastings bring you back for a full hearing." The following month, respondent accepted the full $2,500 fee to represent Wilmore. Despite having received the agreed fee, having entered an appearance in Wilmore's case, and having obtained permission from the judge to review the presentence-investigation report, respondent did not file any motion on Wilmore's behalf.

{¶ 8} Respondent received three letters from relator notifying him of Wilmore's grievance and seeking his response, but he never submitted a reply. On or about May 1, 2007, after receiving a subpoena to appear at a deposition at

relator's office, respondent called relator and requested an extension of time to respond to the letters of inquiry. Although relator extended the time to respond to May 30, 2007, and canceled respondent's deposition, respondent once again failed to submit a response. Even after relator sent respondent a letter stating that probable cause existed to believe that he had committed an ethical violation, respondent did not respond.

{¶ 9} The parties stipulated and the board found by clear and convincing evidence that respondent's conduct violated DR 6-101(A)(3) (a lawyer shall not neglect a legal matter entrusted to him), 7-101(A)(2) (a lawyer shall not intentionally fail to carry out a contract of employment for legal services), and 9-102(B)(4) (a lawyer shall promptly pay or deliver to the client all funds that the client is entitled to receive), and Gov.Bar R. V(4)(G). Additionally, the board found by clear and convincing evidence that respondent's conduct violated DR 1-102(A)(5) (a lawyer shall not engage in conduct prejudicial to the administration of justice), 1-102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law), and 7-101(A)(1) (a lawyer shall not intentionally fail to seek the lawful objectives of a client). We accept these findings of misconduct.

*The Stump Grievance*

{¶ 10} The parties stipulated and the board found that on December 7, 2006, respondent entered a plea of no contest to a charge of misdemeanor attempted aggravated disorderly conduct in the Cleveland Municipal Court, arising out of an altercation with his neighbor, Thomas G. Stump. As a result of the plea, respondent was sentenced to one year of probation. Subsequently, Stump filed both a civil action and a grievance against respondent arising out of the altercation. In the grievance, Stump alleged that respondent had assaulted him because Stump had been called to testify as a witness in a juvenile court matter

involving respondent's children. Although relator sent him two letters regarding the Stump grievance, respondent never responded.

{¶ 11} On December 11, 2007, relator received a letter from Stump seeking to withdraw his grievance so that he could pursue civil remedies against respondent. On December 28, 2007, relator received another letter from Stump, stating that he refused to settle any of his claims against respondent. Attached to that letter was correspondence from respondent advising Stump's counsel that in order to settle the civil matter Stump would have to immediately dismiss the pending disciplinary complaint against respondent. Also attached was a settlement and mutual release of claims, drafted by respondent, which stated: "The Plaintiff will immediately send the attached correspondence to Carol A. Costa, Assistant Disciplinary Counsel of the Ohio Supreme Court, and withdraw grievance # A7-1825. In [sic, If] the Ohio Supreme Court imposes any discipline against Defendant John Chambers due to the allegations set forth in grievance # A7-1825, or considers the allegations set forth in Plaintiff's grievance in any way as an aggravating factor in any future disciplinary proceedings against Defendant John Chambers, the Plaintiff agrees to be subject to a lawsuit for defamation, and specifically waives the applicable statute of limitations. In lieu of filing a separate suit alleging defamation, however, Defendant John Chambers, at his sole option, may compel liquidated damages from the Plaintiff in the amount of $15,000."

{¶ 12} On the day of trial, respondent and Stump met with the trial judge to discuss the possibility of settlement. Eventually, they agreed to dismiss their respective claims and submitted the settlement and mutual release of claims prepared by respondent for the court's approval. However, during the course of the discussions, the trial judge crossed out several provisions of the agreement, including all but the first sentence of the paragraph quoted above, and respondent initialed the changes. In accordance with the revised settlement agreement, Stump sent a letter to relator seeking to withdraw his grievance.

**{¶ 13}** Thereafter, relator informed respondent by letter that it had the authority to investigate any matters that come to its attention, regardless of a grievant's desire to withdraw a grievance. The letter further advised respondent that an attorney should not require a client to forgo filing, dismiss, or resolve a grievance outside of Gov.Bar R. V, and requested a response within two weeks. Respondent did not reply.

**{¶ 14}** The parties stipulated, and the board found, that respondent's conduct with respect to the Stump matter violated Gov.Bar R. V(4)(G). Additionally, the board noted that in *Cuyahoga Cty. Bar Assn. v. Berger* (1992), 64 Ohio St.3d 454, 456, 597 N.E.2d 81, a case in which two attorneys sought to limit the response of a former client to a disciplinary inquiry, this court concluded that the attorneys had violated DR 1-102(A)(5) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice) and 1-102(A)(6) (a lawyer shall not engage in any conduct that adversely reflects on the lawyer's fitness to practice law). Respondent never had an attorney-client relationship with Stump. Nonetheless, the panel and board found, and we agree, that respondent's attempt to have Stump dismiss his grievance violated current Prof.Cond.R. 8.4(d) and (h).

### Sanction

**{¶ 15}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 16}** Although not considered as aggravating or mitigating factors, the board noted the following background to respondent's misconduct. Respondent has practiced as a sole practitioner since 1997, devoting 90 percent of his practice to criminal defense. After his divorce from his first wife in June 1999, he regularly visited his three children until June 2005, when his ex-wife moved with the children to California without his knowledge. The move precipitated child-custody and child-visitation litigation, as well as respondent's depression.

**{¶ 17}** Contemporaneous with relator's investigation of the Wilmore grievance, respondent, who had been sober since 1997, began drinking after he learned that his daughter had been molested. Shortly thereafter, he suffered a stroke and underwent surgery to repair a defect in his heart. Although respondent initially ignored the Wilmore case and relator's letters regarding the investigation, he began to cooperate in the investigation after he sought treatment for alcoholism and other issues in 2008.

**{¶ 18}** As aggravating factors, the board found that respondent had committed multiple offenses and had failed to cooperate in the disciplinary process. BCGD Proc.Reg. 10(B)(1)(d) and (e). As mitigating factors, the parties stipulated and the board found that respondent (1) did not have a prior disciplinary record, see BCGD Proc.Reg. 10(B)(2)(a); (2) has made restitution in the Wilmore matter, although it took him over three years to do so, see BCGD Proc.Reg. 10(B)(2)(c); and (3) had other sanctions imposed in the Stump matter, see BCGD Proc.Reg. 10(B)(2)(f).

**{¶ 19}** Additionally in mitigation, the board found clear and convincing evidence that respondent has been diagnosed with bipolar affective disorder and alcohol dependency, both of which significantly contributed to his misconduct. He has successfully completed a treatment program at the Cleveland Clinic and is fully compliant with both his psychological treatment and a two-year OLAP contract that he entered on November 5, 2008. He has been sober since April 20,

2008, and regularly attends Alcoholics Anonymous meetings. Respondent's treatment providers agree that he can return to the competent, ethical practice of law. See BCGD Proc.Reg. 10(B)(2)(g)(i) through (iv). The board further found that respondent did not have a dishonest or selfish motive for his misconduct. See BCGD Proc.Reg. 10(B)(2)(b).

{¶ 20} In light of respondent's eventual cooperation with the disciplinary process and his progress in treatment, relator has changed its recommended sanction from an indefinite suspension to a two-year suspension, all stayed on the conditions that respondent complete his OLAP contract, continue to be monitored by his monitoring attorney, commit no further misconduct, and pay the costs of the proceeding. Respondent argued that in light of the substantial mitigating factors, a one-year suspension stayed on the same conditions was appropriate.

{¶ 21} The panel and the board recommend that we suspend respondent from the practice of law for one year, all stayed upon the conditions that he complete a three-year probationary period during which he remain subject to, and in compliance with, his OLAP contract, continue to be monitored by an appointed monitoring attorney pursuant to Gov.Bar R. V(9), regularly attend Alcoholics Anonymous meetings, commit no further misconduct, and pay the costs of these proceedings.

{¶ 22} The board does not cite any cases to support its recommendation. However, we note that in *Akron Bar Assn. v. Goodlet*, 99 Ohio St.3d 355, 2003-Ohio-3935, 792 N.E.2d 1072, ¶ 10-15, we imposed a one-year suspension stayed upon similar conditions for violations of DR 6-101(A)(3), 7-101(A)(2), 7-101(A)(3) (a lawyer shall not prejudice his client during the course of the professional relationship), and 1-102(A)(5), and Gov.Bar R. V(4)(G). There, testimony established that at the time he committed his misconduct, the attorney suffered from severe and untreated depression, but that he had since recognized

the need for treatment and had a significant chance of recovery if he complied with treatment recommendations.  Id. at ¶ 7-8.

{¶ 23} Based upon the foregoing, we adopt the findings and conclusions of the board, as well as the board's recommended sanction.  Accordingly, John Joseph Chambers is hereby suspended from the practice of law in Ohio for one year, with the entire suspension stayed on the conditions recommended by the board and set forth above.  If respondent fails to meet these conditions, the stay of his suspension will be lifted, and respondent will serve one year of actual suspension from the practice of law.  Costs are taxed to respondent.

Judgment accordingly.

PFEIFER, ACTING C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

The late CHIEF JUSTICE THOMAS J. MOYER did not participate in the decision in this case.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Carol A. Costa, Assistant Disciplinary Counsel, for relator.

Mary L. Cibella, for respondent.

_____