**DISCIPLINARY COUNSEL *v.* COWDEN.**

**DISCIPLINARY COUNSEL *v.* NAGORNEY.**

**[Cite as *Disciplinary Counsel v. Cowden,* 131 Ohio St.3d 272, 2012-Ohio-877.]**

*Attorneys—Misconduct—Conflicts of interest with clients—Misuse of confidence or secret of client—Stayed suspensions.*

(No. 2011-1047—Submitted August 8, 2011—Decided March 6, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 10-033.

_____

**Per Curiam**.

{¶ 1} Respondents, Gerald Wayne Cowden, Attorney Registration No. 0024360, and Frank Paul Nagorney, Attorney Registration No. 0010933, both of Cleveland, Ohio, were admitted to the practice of law in Ohio in 1975. Cowden is a named partner in the firm of Cowden & Humphrey Co., L.P.A., where Nagorney is also a partner. In April 2010, relator, disciplinary counsel, filed a complaint against Cowden, Nagorney, and a third attorney from their firm, alleging that they had violated multiple Disciplinary Rules of the Code of Professional Responsibility while representing several clients in a series of complex business deals.

{¶ 2} A panel of the Board of Commissioners on Grievances and Discipline found that Cowden had engaged in conduct that adversely reflects on his fitness to practice law by accepting employment when the exercise of his professional judgment may be affected by his personal interests, entering into a business transaction with a client without obtaining the informed consent of the client, and failing to disclose potential conflicts of interest before accepting

employment that was likely to compromise his independent judgment in representing another client.

{¶ 3} The panel also found that Nagorney had engaged in conduct that adversely reflects on his fitness to practice law by using a confidence or secret of a client to the disadvantage of a client and failing to disclose potential conflicts of interest before accepting employment that was likely to compromise his independent judgment in representing another client. The panel recommends that the remaining charges against Cowden and Nagorney be dismissed and has unanimously dismissed all of the charges against a third partner.

{¶ 4} As the sanctions for their misconduct, the panel recommended that Cowden be suspended for one year and that Nagorney be suspended for six months but that both sanctions be stayed on the condition that they commit no further misconduct. The board adopted the panel's findings of fact and misconduct, as well as the recommended sanctions, as do we.

### Misconduct

{¶ 5} Brian Stuffleben was the president, majority owner, and sole director of Technology Strategies, Inc. ("Old TSI"), a software technology company that provided registration information and services to Fortune 500 companies. Old TSI began to experience financial difficulties in 1997 and faced a number of lawsuits arising from the company's acquisition of a marketing firm. In early 1999, Stuffleben retained Cowden to obtain advice about the viability of the company.

{¶ 6} Cowden negotiated a series of forbearance agreements related to Stuffleben's personal guaranty in excess of $1 million to Huntington National Bank and later introduced Stuffleben to Lou Fisi and Dean Ganzhorn, who were both Cowden's clients and his partners in a venture-capital firm called Hockey Stick Investments. Cowden then recommended that Old TSI enter into a secured-party sale with Huntington Bank as a way to reduce Stuffleben's debt, maintain

control of the company, and obtain an infusion of capital. The secured-party sale involved Huntington's foreclosure on the assets of Old TSI and sale of those assets to TSI Holdings Limited ("Limited"), which was wholly owned by Hockey Stick, for $50,000 at closing, two $25,000 installments, and a $250,000 note personally guaranteed by Stuffleben. The assets would then be sold to TSI Holdings, Inc. ("New TSI") in exchange for a warrant for 30 percent of New TSI's stock and a $300,000 note. This plan would reduce Stuffleben's personal guaranty to the bank from $1.1 million to $250,000 and reduced his ownership interest from 94 percent of Old TSI to 64 percent of New TSI. Cowden negotiated the terms of this secured-party sale as counsel for Old TSI, New TSI, Limited, and Hockey Stick.

{¶ 7} Cowden instructed Stuffleben to speak with attorney Robert Vilsack about the transaction, but the terms of the secured-party sale had already been agreed upon, and Cowden was recruiting Vilsack to work for his firm. Vilsack represented New TSI at the closing of the secured-party sale, and Cowden represented both Old TSI and Limited. Although the panel found that Stuffleben was aware that Cowden owned a one-third interest in Hockey Stick and would therefore have a potential ownership interest in New TSI, the panel found that Cowden had failed to fully disclose the potential conflicts of interest inherent in his investment and had failed to strongly advise Stuffleben to seek independent counsel. Within months of this restructuring, Limited defaulted on a $25,000 payment to Huntington that eventually permitted Huntington to take a $227,000 judgment against Stuffleben.

{¶ 8} In December 2000, New TSI needed additional working capital. Fisi instructed Nagorney to draft a factoring agreement between New TSI and Ganzcorp Investments, a company owned by Ganzhorn. Ganzcorp was a client of Cowden's firm, and Cowden owned a 7.5 percent interest in the company. Nagorney, who was unaware of Cowden's relationship to Ganzcorp, represented

New TSI in the factoring agreement, and Ganzhorn negotiated on behalf of Ganzcorp.

{¶ 9}  Nagorney presented the factoring agreement to Stuffleben during a Christmas party in 2000 and instructed him to sign it.  Stuffleben questioned a portion of the agreement that required him to personally guarantee the loan.  When Nagorney advised Stuffleben that the deal could not be completed without the personal guarantee, Stuffleben signed the agreement.  The factoring agreement was, in essence, a loan that enabled New TSI to continue operations for a short period of time.  By February 2001, New TSI was again experiencing financial difficulties, and the following month, investors learned that the company had not been withholding payroll taxes and remitting them to the appropriate authorities.

{¶ 10} In late March 2001, Cowden advised Stuffleben that Hockey Stick would no longer invest in New TSI and that Stuffleben would need to retain new counsel because Cowden had a conflict.  Shortly thereafter, Ganzcorp sent New TSI and Stuffleben a letter, drafted by Nagorney, demanding that they pay $151,900.53 to Ganzcorp under the factoring agreement that Nagorney had prepared while representing New TSI.  Nagorney then arranged for another law firm to represent Ganzcorp against New TSI and Stuffleben for breach of the factoring agreement and discussed the contents of that agreement with Ganzcorp's new counsel.  Pursuant to the factoring agreement that Nagorney drafted as the attorney for New TSI, Ganzcorp obtained a cognovit judgment and lien against New TSI and Stuffleben.  Acting on Ganzcorp's behalf, Nagorney sought to collect the judgment and the costs of obtaining it from his former client—New TSI.

{¶ 11} Based upon the factual findings made by the panel, adopted by the board, and summarized above, the board found that Cowden's conduct violated DR 1-102(A)(6) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law), 5-101(A)(1) (prohibiting a lawyer

from accepting employment if the exercise of the lawyer's professional judgment will be or reasonably may be affected by the lawyer's personal interests), 5-104 (prohibiting a lawyer from entering into a business transaction with a client if they have differing interests unless the client has consented after full disclosure), and 5-105(A) (requiring a lawyer to disclose potential conflicts of interest before accepting employment that is likely to compromise the lawyer's independent judgment on a client's behalf) and that Nagorney's conduct violated DR 1-102(A)(6), 4-101(A) (defining "confidence" and "secret"), and 5-105(A).

{¶ 12} The board recommends that we dismiss allegations that Cowden violated  DR 1-102(A)(6), 5-101(A)(1), 5-104, and 5-105(A) with respect to the enforcement of the factoring agreement against New TSI, as well as allegations that Nagorney violated DR  5-101(A)(1), 1-102(A)(6), 4-101(A), 5-101(A)(1), and 5-105(A) by enforcing the factoring agreement against New TSI and advising Fisi in the completion of Internal Revenue Service forms related to New TSI's tax delinquency.

{¶ 13} None of the parties have objected to the board's report.  In accordance with the board's findings of fact and misconduct, which we adopt, we find that Cowden's conduct violated DR 1-102(A)(6), 5-101(A)(1), 5-104, and 5-105(A) and that Nagorney's conduct violated DR 1-102(A)(6) and 5-105(A).  We also find that Nagorney violated DR 4-101(B)(2) (prohibiting a lawyer from using a confidence or secret of a client to the disadvantage of a client), which the relator and board paraphrased while mistakenly citing DR 4-101(A).  We also dismiss additional allegations that Cowden violated DR 1-102(A)(6), 5-101(A)(1), 5-104, and 5-105(A) and allegations that Nagorney violated DR 1-102(A)(6), 4-101(A), 5-101(A)(1), and 5-105(A) in enforcing the factoring agreement against New TSI and advising Fisi in the completion of Internal Revenue Service forms related to New TSI's tax delinquency.

**Sanction**

{¶ 14} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 15} As aggravating factors, the board found that both Cowden and Nagorney engaged in a pattern of misconduct involving multiple offenses. *See* BCGD Proc.Reg. 10(B)(1)(c) and (d). Mitigating factors include that neither Cowden nor Nagorney has a prior disciplinary record and that neither acted with a selfish motive. *See* BCGD Proc.Reg. 10(B)(2)(a) and (b). They have acknowledged the wrongful nature of their conduct, cooperated in the disciplinary proceedings, and demonstrated that apart from their current misconduct, they have outstanding reputations in the legal community and the community at large. *See* BCGD Proc.Reg. 10(B)(2)(d) and (e). Moreover, the board found that both respondents have taken steps to ensure that their misconduct will not be repeated.

{¶ 16} In his closing argument before the panel, relator argued in favor of a one-year stayed suspension for both Cowden and Nagorney, while Cowden sought a six-month stayed suspension, and Nagorney sought dismissal of the charges against him or at most a public reprimand. Without explaining their rationale, the panel and board recommend a one-year stayed suspension for Cowden and a six-month stayed suspension for Nagorney.

{¶ 17} Cowden and Nagorney failed to adequately disclose potential conflicts of interest that were likely to compromise their independent judgment and failed to obtain their clients' informed consent with respect to their representation of Old TSI, New TSI, and the multiple entities involved in

restructuring and financing those companies. Nagorney drafted a demand letter to New TSI on behalf of Ganzhorn, in which Ganzcorp sought to enforce the factoring agreement that Nagorney had drafted while serving as counsel for New TSI. He also assisted a New TSI officer in completing IRS forms related to his role in the company's payroll-tax delinquency. A malpractice claim arising from Cowden's and Nagorney's involvement in these matters was settled in 2007.

{¶ 18} The board found, however, that Stuffleben had some knowledge of Cowden's financial interest in the corporate restructuring before it occurred. And while we do not condone Cowden's and Nagorney's actions, it is not entirely clear that Stuffleben, Old TSI, or New TSI suffered harm as a result of their conduct.

{¶ 19} Stuffleben testified that before he retained Cowden, Old TSI experienced financial difficulties arising from its takeover of a business that had substantial, uncollectable accounts receivable. Old TSI and Stuffleben, as a personal guarantor, owed more than $1 million to Huntington Bank. Cowden's restructuring of that debt conferred substantial benefits by permitting the business to continue its operations with a reduced debt load and reducing Stuffleben's personal guaranty from approximately $1.1 million to just $250,000.

{¶ 20} The infusion of capital from other entities through the restructuring and factoring agreements permitted Stuffleben to remain in business, maintain majority control of the new company, and continue to draw a salary and benefits for more than a year. When the business failed, Stuffleben was permitted to remove a number of corporate assets, including computer servers and the client database, and use them to start a new business. Thus, Stuffleben received substantial benefits from the representation.

{¶ 21} We have imposed stayed suspensions of varying lengths for comparable misconduct in the past. *E.g., Disciplinary Counsel v. McNamee*, 119 Ohio St.3d 269, 2008-Ohio-3883, 893 N.E.2d 490, ¶ 33, 35 (imposing a one-year

stayed suspension on an attorney who represented multiple parties to a business venture in which he also had a significant financial interest without making the proper disclosures); *Cuyahoga Cty. Bar Assn. v. Schmelzer*, 84 Ohio St.3d 382, 704 N.E.2d 243 (1999) (imposing a six-month stayed suspension on an attorney who initially represented a potential purchaser of real property, but who upon determining that the sale to a third party would be more advantageous to the seller, began to represent the seller).

{¶ 22} Having considered the conduct of Cowden and Nagorney and the aggravating and mitigating factors present, as well as the sanctions imposed in similar cases, we adopt the sanctions recommended by the panel and board.

{¶ 23} Accordingly, Gerald Wayne Cowden is suspended from the practice of law in Ohio for one year, and Frank Paul Nagorney is suspended from the practice of law in Ohio for six months. These suspensions, however, will be stayed on the condition that Cowden and Nagorney commit no further acts of misconduct. If either Cowden or Nagorney fails to comply with this condition, his stay will be lifted, and he will serve the full term of his suspension. Costs are taxed to respondent.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Joseph M. Caligiuri, Senior Assistant Disciplinary Counsel, for relator.

Hahn, Loeser & Parks and Deborah A. Coleman, for respondent Gerald W. Cowden.

Richard C. Alkire and Dean C. Nieding, for respondent Frank P. Nagorney.

_____