**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Thompson,* **Slip Opinion No. 2014-Ohio-2482.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-2482

DISCIPLINARY COUNSEL *v.* THOMPSON.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Thompson,* **Slip Opinion No. 2014-Ohio-2482.]**

*Attorneys—Misconduct—Withdrawing funds from client trust account for personal and business use—Failure to timely withdraw earned fees from client trust account—Misappropriation of client funds—Two-year suspension, 18 months stayed with monitored probation.*

(No. 2013-1262—Submitted October 9, 2013—Decided June 12, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 2012-092.

_____

**Per Curiam**.

{¶ 1} Respondent, Harold Lee Thompson of Columbus, Ohio, Attorney Registration No. 0033253, was admitted to the practice of law in Ohio in 1975. In March 1982, we publicly reprimanded Thompson based on findings that he had withdrawn unearned funds from his client trust account to meet personal and

office expenses and caused an overdraft of the account. *Columbus Bar Assn. v. Thompson*, 69 Ohio St.2d 667, 433 N.E.2d 602 (1982).

{¶ 2} On December 10, 2012, a probable-cause panel of the Board of Commissioners on Grievances and Discipline certified to the board a three-count complaint filed against Thompson by relator, disciplinary counsel. In that complaint, relator alleged that Thompson had violated the Rules of Professional Conduct by using his client trust account as a personal and operating account, failing to timely withdraw earned fees from that account, and misappropriating client funds.

{¶ 3} The parties entered into stipulations of fact, misconduct, aggravation, and mitigation and recommended that Thompson be suspended from the practice of law for two years, with 18 months stayed on the condition that he successfully complete 18 months of probation. At the hearing, they also submitted Thompson's testimony and 21 exhibits, 19 of which were stipulated.

{¶ 4} The panel made findings of fact and conclusions of law and recommended that we adopt the parties' stipulated sanction. The board adopted the panel's report in its entirety. Having thoroughly reviewed the record, we adopt the board's findings of fact and conclusions of law and suspend Thompson for two years with 18 months stayed on the condition that he serve an 18-month period of monitored probation.

## Misconduct

Count I—Use of Client Trust Account for Personal and Business Expenses

{¶ 5} From December 2010 through April 2012, Thompson used his client trust account to hold funds belonging to clients and third parties, but also used it as if it were his personal bank account and law-office operating account. He used the account to pay his law-office rent, his residential rent, the fee for his office parking space, and credit-card and telephone bills. During this time he also issued 77 separate checks to himself for amounts ranging from $25 to $26,750.

He further deposited his personal funds into his client trust account, including $9,600 from an advertising refund deposited on February 22, 2011.

{¶ 6} The parties stipulated, the board found, and we agree that this conduct violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold the property of clients in an interest-bearing client trust account, separate from the lawyer's own property) and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

Count II—Failure to Timely Withdraw Earned Fees

{¶ 7} From December 2010 through September 2011, Thompson settled eight contingency-fee cases for gross settlement amounts ranging from $4,480 to $129,340. He prepared a closing statement for each client that stated the total amount of the settlement, expenses, and attorney fees, and the amount that the client was entitled to receive. While he paid each client his or her share of the settlement proceeds, he failed to promptly withdraw his own fees from his client trust account. Instead, Thompson withdrew his fees using multiple checks issued to himself and his creditors over a period of weeks or months in amounts ranging from a few dollars to thousands of dollars. Consequently, he commingled personal and client funds in his client trust account. He also failed to maintain appropriate accounting records regarding the ownership of client funds and earned fees in the account, which resulted in four overdrafts of the account in September 2011.

{¶ 8} The parties stipulated and the board found that this conduct violated Prof.Cond.R. 1.15(a), 1.15(a)(2) (requiring a lawyer to maintain a record for each client on whose behalf funds are held), 1.15(a)(3) (requiring a lawyer to maintain a record for the lawyer's client trust account, setting forth the name of the account, the date, amount, and client affected by each credit and debit, and the balance in the account), and 8.4(h). We adopt these findings of fact and misconduct.

Count III—Misappropriation

{¶ 9} On January 26, 2011, Thompson deposited a $100,000 settlement check received on behalf of his client, A.G. Pursuant to his contingency-fee agreement with A.G., Thompson was to receive a fee of $33,333, and A.G. was entitled to receive $29,000 from the settlement proceeds. Because Thompson did not distribute the $29,000 to A.G. until July 2011, the balance in his client trust account should not have gone below that amount. But the balance in his client trust account dropped as low as $25,467.15 in March 2011 and remained below $29,000 from April through June 2011, when it reached a low of $6,556.47. Thus, the parties have stipulated and the board has found that Thompson misappropriated at least $22,443.53 in funds owed to A.G.

{¶ 10} Thompson deposited a $29,000 check drawn on his operating account into his client trust account on July 1, 2011. And on July 19, 2011, he distributed $29,000 from his client trust account to A.G.

{¶ 11} The parties stipulated and the board found that this conduct violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and 8.4(h). We adopt these findings of fact and misconduct.

**Sanction**

{¶ 12} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors

listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 13} Aggravating factors stipulated by the parties and found by the board include Thompson's prior disciplinary offense involving the same type of conduct, his pattern of misconduct, and his multiple offenses. *See* BCGD Proc.Reg. 10(B)(1)(a), (c), and (d). The board also found that Thompson acted with a dishonest or selfish motive. *See* BCGD Proc.Reg. 10(B)(1)(b). In mitigation, the parties stipulated and the board agreed that Thompson timely made restitution to the client affected by his misconduct and exhibited a cooperative attitude toward the disciplinary proceedings. *See* BCGD Proc.Reg. 10(B)(2)(c) and (d). The board also found that Thompson had taken the initiative to significantly upgrade and modify his financial-management system from the antiquated paper-based system that exacerbated his misconduct. His new system includes PC Law accounting software and the employment of an outside accounting firm that can securely and remotely access and monitor his trust and operating accounts.

{¶ 14} Thompson voluntarily submitted to an evaluation by the Ohio Lawyers Assistance Program ("OLAP"). Though he has not been diagnosed with a mental disorder or substance-abuse issues, he entered into a two-year OLAP contract and has received counseling to help him deal with stress.

{¶ 15} The parties stipulated that a 24-month suspension with 18 months stayed on the condition that upon Thompson's return to practice law he will successfully comply with and complete an 18-month period of probation with a focus on the management of his client trust account. Of the cases cited by the parties, the board found *Disciplinary Counsel v. Riek*, 125 Ohio St.3d 46, 2010-Ohio-1556, 925 N.E.2d 980, to be most analogous to the facts of this case.

{¶ 16} In *Riek*, we imposed an 18-month suspension with 12 months stayed on the condition of no further misconduct for an attorney who commingled

personal and client funds, paid personal expenses directly from his client trust account, misappropriated client funds causing overdrafts on at least four occasions, and then lied to a client about the reason a settlement check had been dishonored. *Id*. at ¶ 4-8, 14. There were no aggravating factors present, but mitigating factors included the absence of a prior disciplinary record, Riek's full and free disclosure to the board and cooperative attitude toward the proceedings, and evidence of his good character apart from the charged misconduct. *Id.* at ¶ 11.

{¶ 17} As the board notes, Thompson's misconduct is more serious than that of Riek because he has previously been disciplined for the same type of misconduct. The definitive steps that Thompson has taken to prevent this type of misconduct from occurring in the future, however, persuaded the board to adopt the parties' stipulated sanction.

{¶ 18} Having considered Thompson's misconduct, the aggravating and mitigating factors present, and the sanctions we have imposed for comparable misconduct, we agree that a two-year suspension with 18 months stayed on conditions, including an 18-month period of monitored probation, is the appropriate sanction in this case.

{¶ 19} Accordingly, Harold Lee Thompson is suspended from the practice of law in Ohio for two years. The last 18 months of that suspension, however, will be stayed on the conditions that upon reinstatement to the practice of law, he serve an 18-month period of monitored probation in accordance with Gov.Bar R. V(9) and engage in no further misconduct. If Thompson fails to comply with these conditions, the stay will be revoked and he will serve the full two-year suspension. Costs are taxed to Thompson.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

O'NEILL, J., dissents and would impose a two-year suspension, all stayed on the condition that Thompson continue his contract with the Ohio Lawyers Assistance Program for the duration of the stayed-suspension period.

_____

Scott J. Drexel, Disciplinary Counsel, and Donald M. Scheetz, Assistant Disciplinary Counsel, for relator.

William C. Mann, for respondent.

_____