CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* FONDA.

[Cite as *Cleveland Metro. Bar Assn. v. Fonda,* 138 Ohio St.3d 399,

2014-Ohio-850.]

*Attorneys—Misconduct—Failure to act with reasonable diligence—Failure to keep clients reasonably informed of status of legal matters—Failure to respond to reasonable requests for information—One-year suspension, stayed on conditions.*

(No. 2013-0571—Submitted August 20, 2013—Decided March 12, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 12-030.

_____

**Per Curiam**.

{¶ 1}  Respondent, Charles Walter Fonda of Cleveland, Ohio, Attorney Registration No. 0022753, was admitted to the practice of law in Ohio in 1981.  In April 2012, relator, Cleveland Metropolitan Bar Association, charged Fonda with professional misconduct arising from his alleged neglect of two separate client matters.  Relator amended its complaint in July 2012 to allege an additional violation of the Rules of Professional Conduct in Count One.

{¶ 2}  With respect to both clients, a panel of the board found that Fonda failed to act with reasonable diligence, failed to keep the clients reasonably informed about the status of their legal matters, and failed to comply with their reasonable requests for information. But the panel recommended that several other alleged violations be dismissed.  The board adopted the panel's findings of fact, conclusions of law, and recommended sanction of a one-year suspension, all stayed on conditions.

**{¶ 3}** Fonda objects to the board's findings of misconduct with regard to Count Two of the complaint, arguing that no violations occurred, and urges us to impose a lesser sanction of a public reprimand for the violations found by the board with respect to Count One of the complaint. Having thoroughly reviewed the record, we overrule Fonda's objections, adopt the board's findings of fact and conclusions of law, and suspend Fonda from the practice of law in Ohio for one year, but stay the entire suspension on the conditions recommended by the board.

**Misconduct**

**{¶ 4}** Before the hearing, the parties entered into stipulations of fact—but not misconduct—and relator submitted the deposition testimony of Damon Walton to the board. At the hearing, the parties presented a number of exhibits and the live testimony of four witnesses, including Fonda.

**Count One—The Schub Matter**

**{¶ 5}** The board found that on June 29, 2007, California resident Janice Schub retained Fonda to probate her brother's estate. Their written agreement obligated Fonda to "prepare and file the Initial Application to Administer Estate and To Probate Will, Appointment of Appraiser form, all documents necessary to transfer real estate and other documents, and [to handle] the filing of accounts and closing of the estate." Schub understood that Fonda would handle all phases of closing the estate—including the filing of an Ohio estate tax return and any necessary federal tax returns.

**{¶ 6}** Without requesting an extension of time, Fonda filed the Ohio estate tax return on May 10, 2010—almost 20 months late. As a result of this delay, the estate paid $1,080.66 in accrued interest.

**{¶ 7}** Fonda filed the decedent's 2007 federal income tax return on July 19, 2011—39 months late. Due to Schub's own efforts, the Internal Revenue Service waived the penalty for late filing and reduced the interest on the late payment to $180.65. Because Fonda waited until July 2011 to file the federal

2

estate tax return—making it approximately 42 months late—the estate paid $436.95 in penalties and interest. On these facts, the board found that Fonda violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client).

{¶ 8} By March 2010, Fonda stopped returning Schub's calls, and when he did not respond to her letters and e-mails, she resorted to sending him a letter by certified mail. Schub terminated his services and requested her file in January 2012—approximately four and one-half years after she retained him. At the time of the hearing in December 2012, Schub had still not received her file.

{¶ 9} The board found that Fonda's failure to keep Schub reasonably informed about the status of her case and his failure to respond to her calls violated Prof.Cond.R. 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter) and 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client) and that his failure to promptly return her file on request violated Prof.Cond.R. 1.16(d) (requiring a lawyer withdrawing from representation to take steps reasonably practicable to protect a client's interest).

{¶ 10} However, the board determined that relator had offered no evidence that Fonda's fee of approximately $12,000 was clearly excessive or that he failed to communicate with Schub about his fees and expenses. The board therefore recommended that we dismiss alleged violations of Prof.Cond.R. 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee) and 1.5(b) (requiring an attorney to communicate the nature and scope of the representation and the basis or rate of the fee and expenses within a reasonable time after commencing the representation). It also concluded that relator failed to prove that Fonda's conduct was prejudicial to the administration of justice and, therefore, recommends that we dismiss an alleged violation of Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct

that is prejudicial to the administration of justice).  We adopt these findings of fact and conclusions of law.

### Count Two—The Walton Matter

{¶ 11} Damon Walton purchased a truck from a Cleveland auto dealer in February or March 2009.  He agreed to make the down payment in installments. After several such payments, the dealer made two demands for more money. After Walton refused the second request, the dealer repossessed the truck with the purchase contract and other personal property inside.  On May 13, 2009, Walton retained Fonda to prepare a demand letter and negotiate a resolution of his dispute with the dealer.  He paid $100 of Fonda's $250 retainer at that time and the remainder at a second meeting two days later.  But after that meeting, Fonda would not accept or return Walton's phone calls.

{¶ 12} In late July or early August 2009, Walton went to Fonda's office without an appointment to discuss his case.  At that time, Fonda showed him a copy of a demand letter he had sent to the dealer on July 23, 2009.  Walton's frequent calls to Fonda again went unanswered or unreturned, and after he became verbally abusive toward Fonda's assistant, she refused to take his calls. After Fonda finally scheduled a meeting with him for July 27, 2010, Walton suffered severe injuries in an assault and missed his appointment.

{¶ 13} From October 2010 to March 2011, Walton attempted to contact Fonda numerous times.  In early March, Fonda advised Walton that if he wanted to file suit against the dealer he would need to make an additional payment of $100. Walton met with Fonda on March 7, 2011, and gave him a check for $100 drawn on his mother's account.  Fonda did not negotiate the check, file a lawsuit, or communicate with Walton after that date.

{¶ 14} Walton filed a grievance against Fonda in November 2011.  He terminated his representation in January 2012 and requested the return of his file at that time.  Fonda did not respond to his request, though his counsel did send the

March 7, 2011 check and copies of Walton's documents to relator's counsel in July 2012, and counsel forwarded them to Walton.

**{¶ 15}** The board found that Fonda failed to act with reasonable diligence during the 33 months that he represented Walton, in violation of Prof.Cond.R. 1.3, that he failed to reasonably communicate with Walton in violation of Prof.Cond.R. 1.4(a)(4), and that he failed to promptly return Walton's file in violation of Prof.Cond.R. 1.16(d). But the board recommended that we dismiss the alleged violation of Prof.Cond.R. 8.4(d) based on the insufficiency of the evidence.

**{¶ 16}** Fonda objects to the board's findings of fact and misconduct, arguing that he acted with reasonable diligence and promptness and fully performed the services that Walton hired him to provide. He contends that pursuant to the terms of his written agreement with Walton, he was not obligated to render further services until Walton signed a litigation agreement and advanced court costs. He claims that without such an agreement, he could not have violated Prof.Cond.R. 1.4(a)(3) or 1.4(a)(4) because his representation was complete and there was no additional information for him to provide to Walton. He further claims that he had nothing to return to Walton and, therefore, could not have violated Prof.Cond.R. 1.16(d).

**{¶ 17}** The written representation agreement that Fonda and Walton signed provides:

> The CLIENT has retained and hereby does retain the ATTORNEY to prepare a demand letter on his behalf to Auto Rite (salesman/finance manager Von) for the return of his vehicle and/or funds deposited with Auto-Rite relating to a vehicle transaction with Auto-Rite, which transpired at the end of March, 2009. The attorney is specifically retained to prepare such demand

letter, and to proceed with follow-up negotiations, if any. Should a lawsuit be required, the parties hereto will proceed under a separate agreement.

{¶ 18} Fonda argues that he acted with reasonable diligence and promptness in performing the limited tasks that were required under this contract with Walton and that he had no duty to communicate with Walton about those efforts or the possibility of filing suit once those efforts failed. But Fonda waited more than two months to send the simple, three-paragraph demand letter to the dealer. Though Fonda now suggests that this delay was occasioned by Walton's failure to deliver documents relating to his purchase of the vehicle, he admitted in his testimony that at their first meeting, Walton advised him that those documents were in the vehicle when it was repossessed. Thus, Fonda's claims that it was Walton who occasioned the delay are unavailing.

{¶ 19} At his deposition, Walton testified that after paying the retainer, he called Fonda three or four times a week, but Fonda did not return his calls. He stated that he stopped by Fonda's office one day in July or August 2009 to check on his case, and Fonda showed him a July 29, 2009 letter addressed to the dealer. This evidence clearly and convincingly demonstrates that Fonda's failure to keep Walton informed about the status of his legal matter and failure to comply with Walton's reasonable requests for information began during his initial representation of the client.

{¶ 20} Fonda's failure to reasonably communicate with Walton also extended beyond the initial agreement of representation. While it appears that the dealer did not respond to Fonda's letters seeking the return of the truck or a refund of Walton's down payment, Walton testified that he was told that Fonda was still working on his case and that it would be headed to court "soon." When Walton demanded that Fonda refund his money if he was not going to work on

the case, Fonda told him to bring in an additional $100 for a filing fee to take the matter to court. Walton delivered the money to Fonda in person a few days later. Fonda accepted the check and placed it in Walton's file (though he never cashed it), but he never mentioned a new agreement or presented one for Walton's signature, and he never filed suit on Walton's behalf. Fonda knew that Walton wanted to pursue his case in court and led him to believe for more than two and a half years that it would be filed. Thus, his protestations that the terms of the fee agreement expressly required a second agreement before litigation would be pursued, while true, are unavailing.

{¶ 21} In *Cuyahoga Cty. Bar Assn. v. Hardiman*, 100 Ohio St.3d 260, 2003-Ohio-5596, 798 N.E.2d 369, ¶ 10, we stated that an attorney-client relationship can be formed by implication, based on the conduct of the attorney and the reasonable expectations of the client. *See also Disciplinary Counsel v. Furth*, 93 Ohio St.3d 173, 184, 754 N.E.2d 219 (2001) (finding a violation of DR 6-101(A)(3), which prohibited neglect of an entrusted legal matter, when the client reasonably believed that the attorney was representing him and his son in a legal matter). In *Hardiman*, we found that the client reasonably believed that he had secured legal representation based on the acceptance by the attorney's office of a partial payment of the retainer, the attorney's failure to advise the client that the representation would not commence until the full retainer was received, and the attorney's knowledge of the legal subject matter. *Hardiman* at ¶ 11.

{¶ 22} Unlike Hardiman, Fonda attempted to limit the scope of his representation in his written agreement with Walton, but his actions after that contract was signed—including his representations that the case would soon go to court, his acceptance of the $100 check for court costs, his corresponding failure to present Walton with a new agreement, and perhaps most importantly, his failure to correct Walton's obvious belief that Fonda's representation extended to litigation without a new agreement—conveyed a different message. Walton's

testimony clearly and convincingly demonstrates that Fonda's actions led him to reasonably believe that the representation continued until he terminated Fonda's services in January 2012. Consequently, we find that Fonda's conduct continued to violate Prof.Cond.R. 1.3, 1.4(a)(3), and 1.4(a)(4) until that time.

{¶ 23} Fonda also challenges the board's finding that he violated Prof.Cond.R. 1.16(d), which provides:

> As part of the termination of representation, a lawyer shall take steps, to the extent reasonably practicable, to protect a client's interest. The steps include giving due notice to the client, allowing reasonable time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules. Client papers and property shall be promptly delivered to the client. "Client papers and property" may include correspondence, pleadings, deposition transcripts, exhibits, physical evidence, expert reports, and other items reasonably necessary to the client's representation.

{¶ 24} Here, Fonda asserts that Walton deposited no papers or property with him, that he did not possess any other items reasonably necessary for Walton's representation, and that therefore, he had nothing to promptly return when Walton requested his file. But in his testimony, Fonda admitted that the $100 check he received (but did not cash) belonged to Walton and his family and that the correspondence he sent to the dealer on Walton's behalf would be helpful to any attorney that Walton might hire to pursue his claim. Yet Fonda waited until July 25, 2012—more than six months after Walton requested his file—to deliver those items to relator for forwarding to Walton. Moreover, the evidence clearly and convincingly demonstrates that despite Walton's clear belief that

Fonda would continue to represent him in a lawsuit, he failed to advise Walton of his intention to withdraw as required by Prof.Cond.R. 1.16(d).

{¶ 25} Based on the foregoing, we find that there is sufficient evidence to establish that Fonda has violated Prof.Cond.R. 1.3, 1.4(a)(3), 1.4(a)(4), and 1.16(d) as found by the board. Therefore, we overrule Fonda's objections as to those findings of misconduct, adopt the board's findings of fact and misconduct, and dismiss the alleged violation of Prof.Cond.R. 8.4(d) as recommended by the board.

### Sanction

{¶ 26} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 27} The board found that several aggravating factors are present, including a pattern of misconduct, multiple offenses, and the vulnerability of and harm to the affected clients. *See* BCGD Proc.Reg. 10(B)(1) (c), (d), and (h). Mitigating factors found by the board include the absence of prior disciplinary offenses and the absence of a dishonest or selfish motive. *See* BCGD Proc.Reg. 10(B)(2)(a) and (b).

{¶ 28} This matter was originally scheduled for hearing on August 27, 2012, but at Fonda's request, that hearing was continued until December 10, 2012, to permit him to obtain a psychological evaluation pursuant to his August 1, 2012 contract with the Ohio Lawyers Assistance Program ("OLAP"). The board acknowledged the report of James M. Medling, Ph.D., the clinical psychologist who evaluated Fonda in late August 2012 and commenced his psychological

counseling. Dr. Medling diagnosed Fonda with generalized anxiety disorder and dysthymic disorder, opined that those disorders contributed to Fonda's misconduct in the Schub and Walton matters, and stated that "[c]urrently and with continued psychological treatment, Mr. Fonda is able to provide competent, ethical professional service to his clients." While this report satisfies three of the four criteria set forth in BCGD Proc.Reg. 10(B)(2)(g)[1] for recognizing a mental disability as a mitigating factor in attorney-disciplinary proceedings, the fourth factor—a sustained period of successful treatment—is not present here, because Fonda's treatment began just over three months before the hearing. The board acknowledged the diagnosis but did not state that it was mitigating.

{¶ 29} Before the board, relator argued in favor of a one-year suspension with no more than six months stayed on conditions. Fonda urged the board to find that he had not committed any misconduct or to recommend only a public reprimand. The board, however, recommended that we suspend Fonda from the practice of law for one year, all stayed, on the conditions that he make restitution of $707.33 to Schub (representing the $1,698.26 in interest and penalties that Fonda stipulated was the result of his failure to timely file tax documents on behalf of the estate, less a $990.93 payment that he made to the Cuyahoga County treasurer on behalf of the estate) and that he remain in compliance with his August 1, 2012 OLAP contract.

---

1. BCGD Proc.Reg. 10(B)(2)(g) provides that chemical dependency or mental disability may be considered in favor of recommending a less severe sanction when all of the following are present:

> (i) A diagnosis of a chemical dependency or mental disability by a qualified health care professional or alcohol/substance abuse counselor;
> (ii) A determination that the chemical dependency or mental disability contributed to cause the misconduct;
> (iii) In the event of chemical dependency, a certification of successful completion of an approved treatment program or in the event of mental disability, a sustained period of successful treatment;
> (iv) A prognosis from a qualified health care professional or alcohol/substance abuse counselor that the attorney will be able to return to the competent, ethical professional practice under specified conditions.

{¶ 30} Fonda objects to the board's recommended sanction, arguing that with credit for additional mitigating factors not found by the board—including his mental disability, full and free disclosure to the board and cooperative attitude toward the disciplinary proceedings, and his good character and reputation as attested to in multiple letters to the board—a public reprimand is the proper sanction for his misconduct.

{¶ 31} As previously discussed, Fonda's mental disability does not qualify as a mitigating factor because the record does not demonstrate that he has achieved a sustained period of successful treatment. And we are not persuaded by Fonda's claims that he made a full and free disclosure to the board or displayed a cooperative attitude toward the proceedings. Although he stipulated that the interest and penalties assessed against the decedent's estate were incurred as a result of the late filing of the estate tax returns, at the hearing and in his objections, he attempted to disclaim responsibility for some of those charges as being occasioned by the late discovery of additional estate assets. Moreover, he attempted to disavow responsibility for his failures in the Walton matter by focusing on the contractual limitation on the scope and duration of his representation—despite the fact that he also engaged in misconduct during the admitted portion of his representation. Thus, we cannot find that he made full and free disclosure to relator or that he demonstrated a cooperative attitude toward these proceedings.

{¶ 32} Fonda has submitted letters from three clients, generally praising his legal work and his prompt attention to their inquiries. He also submitted five letters from colleagues praising his competence, character, and integrity, although none of them stated that they were aware of the nature of the charges against him, and one acknowledged that he did not know the circumstances of relator's investigation. The board made no mention of these character references in its report. While they are evidence of Fonda's good character and reputation, they

are of limited value and do not absolve him of responsibility for his misconduct in his representation of Schub and Walton.

{¶ 33} Fonda cites a number of cases in which we have imposed public reprimands, focusing on the mitigating factors present in those cases and arguing that they are similar to the mitigating factors that he has urged us to find in this case. Fonda's conduct, however, is not comparable. For example, in *Disciplinary Counsel v. Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, ¶ 6, 15, we publicly reprimanded an attorney who, due to careless and sloppy timekeeping practices, overbilled the county for court-appointed work. *Lorain Cty. Bar Assn. v. Stuart*, 135 Ohio St.3d 117, 2012-Ohio-5687, 984 N.E.2d 1041, ¶ 11, involved an attorney who failed to provide competent representation to a client and failed to notify his client that he did not maintain professional liability insurance. And while the conduct at issue in *Trumbull Cty. Bar Assn. v. Rucker*, 134 Ohio St.3d 282, 2012-Ohio-5642, 981 N.E.2d 866, ¶ 3-4, involved neglect of a client's legal matter, failure to deposit client funds in an interest-bearing client trust account, and charging a "nonrefundable" fee without making certain required disclosures to the client, the matter was submitted to the board on a consent-to-discipline agreement.

{¶ 34} In *Cleveland Metro. Bar Assn. v. Gusley*, 133 Ohio St.3d 534, 2012-Ohio-5012, 979 N.E.2d 319, ¶ 1, 6, we approved a consent-to-discipline agreement and publicly reprimanded an attorney who failed to enter into a written contingent-fee agreement with a client and failed to register for the electronic-filing system of the federal district court, which resulted in missing a filing deadline of which he otherwise would have been notified. And in *Columbus Bar Assn. v. Bhatt*, 133 Ohio St.3d 131, 2012-Ohio-4230, 976 N.E.2d 870, ¶ 10, 16, 19, we publicly reprimanded an attorney who stipulated that he had neglected two client matters, failed to keep those clients reasonably informed about their matters, failed to notify them that his professional liability insurance lapsed for

several months during his representation, and failed to deposit funds into his client trust account pending the resolution of a shareholder dispute regarding ownership of the funds.

{¶ 35} In contrast to the cases that Fonda cites, he has neglected the legal matters of two clients and failed to reasonably communicate with those clients for more than three years, and then when those clients were fed up with his inaction, he failed to promptly return the case files and one client's check for court costs. Although he stipulated to many facts and does not challenge the findings of misconduct with respect to the Schub matter, he steadfastly maintains that he completed Walton's representation and did nothing wrong in that case. Moreover, Fonda attributes much of his misconduct to his anxiety and dysthymic disorder, which were diagnosed less than three months before his panel hearing, and for which he has not demonstrated a sustained period of successful treatment.

{¶ 36} We find the facts of this case to be most comparable to those of *Disciplinary Counsel v. Brueggeman*, 128 Ohio St.3d 206, 2010-Ohio-6149, 943 N.E.2d 509. Brueggeman neglected four separate client matters, failed to keep three clients reasonably informed about the status of their matters, and failed to comply with the reasonable requests of those three clients for information. *Id.* at ¶ 5-6, 10-11, 14, 19. He also knowingly failed to respond to multiple letters of inquiry from disciplinary counsel, although he did provide full and free disclosure and exhibit a cooperative attitude in the proceedings once relator filed his complaint. *Id.* at ¶ 4, 8, 13, 16, 18, and 22. Based on the board's recommendation, however, we determined that Brueggeman's diagnosed dysthymia was a mitigating factor and imposed a 12-month suspension, fully stayed on the conditions that he serve one year of monitored probation, comply with his existing OLAP contract, continue counseling, and refrain from any additional misconduct. *Id.* at ¶ 23-25, 27.

**{¶ 37}** While Fonda's misconduct is somewhat less egregious than that of Brueggeman, we have not found his anxiety and dysthymia to be mitigating factors as we did in *Brueggeman*. And we believe that a term suspension, all stayed on conditions, is the best way to ensure that those disorders will not cause additional harm to the public. Accordingly, we suspend Charles Walter Fonda from the practice of law for one year, but stay the entire suspension on the conditions that he make restitution of $707.33 to Schub within 90 days of the date of this order, that he remain in compliance with his August 1, 2012 OLAP contract, and that he engage in no further misconduct. Costs are taxed to Fonda.

Judgment accordingly.

O'CONNOR, C.J., and LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

PFEIFER and O'DONNELL, JJ., dissent and would impose a public reprimand.

_____

Heather M. Zirke, Bar Counsel; and Jones Day, Joseph E. Huigens, and Robert S. Faxon, for relator.

Lester S. Potash; and Stanley E. Stein & Associates Co., L.P.A., and Stanley E. Stein, for respondent.

_____