**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Dayton Bar Assn. v. Hooks,* **Slip Opinion No. 2014-Ohio-2596.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-2596

DAYTON BAR ASSOCIATION *v.* HOOKS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Dayton Bar Assn. v. Hooks,* Slip Opinion No. 2014-Ohio-2596.]**

*Attorneys—Misconduct—Failure to act with reasonable diligence—Failure to keep client reasonably informed about status of a matter—Six-month suspension, stayed on conditions.*

(No. 2013-1624—Submitted December 11, 2013—Decided June 19, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 2013-023.

_____

**Per Curiam**.

{¶ 1} Respondent, Shawn Patrick Hooks of Dayton, Ohio, Attorney Registration No. 0079100, was admitted to the practice of law in Ohio in 2005.

{¶ 2} In April 2013, relator, Dayton Bar Association, filed a complaint alleging that Hooks had violated the Rules of Professional Conduct by neglecting a client's legal matter, failing to reasonably communicate with the client, and

failing to cooperate in the ensuing disciplinary investigation. A probable-cause panel of the Board of Commissioners on Grievances and Discipline certified the complaint to the board, and the secretary of the board appointed a panel to hear the matter.

{¶ 3} Hooks stipulated to the material facts of relator's complaint and admitted that his conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4 (requiring a lawyer to reasonably communicate with a client), and 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation). The panel made findings of fact and agreed that Hooks's conduct violated Prof.Cond.R. 1.3 and 1.4. Based on Hooks's testimony, however, the panel recommended that the alleged violation of Prof.Cond.R. 8.1 be dismissed. Citing just one aggravating factor and several mitigating factors, the panel recommended that Hooks be suspended from the practice of law for six months, all stayed on conditions. The board adopted the findings and recommendations of the panel.

{¶ 4} We adopt the board's findings of fact and misconduct and agree that a six-month suspension, stayed on conditions, is the appropriate sanction for Hooks's misconduct.

## Misconduct

{¶ 5} Michael Staup retained Hooks in October 2011 to seek modification of existing child-custody and child-support orders in Montgomery County, Ohio, because the child who was the subject of the orders had come to reside with him.

{¶ 6} Because Staup lived in Tennessee, all contact he had with Hooks was by telephone, facsimile transmission, and e-mail. He sent Hooks the necessary paperwork and a retainer of $1,500 on November 14, 2011. In a conversation about ten days later, Hooks acknowledged receipt of the documents and retainer, requested copies of the child's medical bills, and advised Staup that

he would file the necessary pleadings after Thanksgiving. After the holiday, Staup attempted to reach Hooks a number of times by telephone and e-mail. And in early January 2012, Hooks told him that he was attending to the matter.

**{¶ 7}** Staup constantly called and left messages for Hooks after that because he had heard nothing and continued to pay $291 in child support each month for the child who was then living with him. Having received no response, he eventually filed a grievance with relator.

**{¶ 8}** In September 2012, relator contacted Hooks and requested a copy of Staup's file. At that time, Hooks acknowledged that he represented Staup and promised to provide a copy of Staup's file to relator. Despite several additional requests from relator, Hooks never provided a copy of the file.

**{¶ 9}** Hooks admitted that by failing to file documents seeking to modify Staup's custody and child-support obligations, he failed to act with reasonable diligence in violation of Prof.Cond.R. 1.3, that by failing to keep Staup reasonably informed as to the status of his legal matter he violated Prof.Cond.R. 1.4, and that by failing to provide a copy of Staup's file to relator on request he violated Prof.Cond.R. 8.1. The board agreed that his conduct violated Prof.Cond.R. 1.3 and 1.4. But it excused his failure to respond to the inquiry of the first investigator assigned to the matter who was later replaced—a magistrate who routinely presided over cases in which he appeared as an attorney—based on his belief that she would step down, necessitating the appointment of a new investigator. And although Hooks was unable to provide the file within the time constraints imposed by relator, the board believed that Hooks had made a good-faith effort to locate and produce the Staup file, which had been misplaced. Therefore, the board recommended that the alleged violation of Prof.Cond.R. 8.1 be dismissed.

**{¶ 10}** We adopt these findings of fact and misconduct and dismiss the alleged violation of Prof.Cond.R. 8.1.

## Sanction

{¶ 11} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 12} The board found one aggravating factor—that Hooks committed multiple offenses—but noted that the offenses related to just one client and that there was no evidence of a pattern of misconduct. *See* BCGD Proc.Reg. 10(B)(1)(d). As mitigating factors, the board found that Hooks does not have a prior disciplinary record, did not act with a dishonest or selfish motive, and has accepted responsibility for his misconduct. *See* BCGD Proc.Reg. 10(B)(2)(a) and (b).

{¶ 13} Without making excuses for his misconduct, Hooks explained at the disciplinary hearing that at the time of his misconduct, he was working at a new firm with no support staff and was dealing with issues in a personal relationship. He reported that since Staup filed his grievance, he and his law partner had hired an assistant to ensure that client matters are handled promptly and to better manage their client files. Hooks also acknowledged that he had been charged with operating a vehicle while intoxicated in March 2011. He entered into and successfully completed a diversion program that included an evaluation for alcohol dependency, but reported that no follow-up care was required. Hooks stated at the disciplinary hearing that he had sent a check to Staup the previous week to refund Staup's retainer.

{¶ 14} The board recommends that Hooks be suspended from the practice of law for six months, all stayed on the conditions that he (1) complete 12 hours

4

of continuing legal education in law-office management with instruction regarding office organization, time and task management, and basic software aids for case management, (2) submit to an evaluation by the Ohio Lawyers Assistance Program ("OLAP") and enter into any follow-up contract deemed necessary by OLAP, (3) participate in a one-year mentoring program with a mentor approved by relator, and (4) commit no further misconduct.

{¶ 15} In recommending this sanction, the board patterned its consideration upon our analysis in *Allen Cty. Bar Assn. v. Brown*, 124 Ohio St.3d 530, 2010-Ohio-580, 925 N.E.2d 112. Brown had accepted retainers from two separate clients, but failed to perform the contracted work. *Id.* at ¶ 3. She repeatedly ignored her clients' requests for information regarding the status of their cases and did not refund their retainers until they initiated disciplinary proceedings against her. *Id.* at ¶ 3-4. She attributed her misconduct to her disorganization and her tendency to avoid problems rather than address them—a response that the board believed signified a deeper problem, particularly in light of the fact that she had twice rejected offers from her local bar association to assist her with her practice difficulties. *Id.* at ¶ 5.

{¶ 16} In determining that a one-year suspension, fully stayed on conditions, was the appropriate sanction for Brown's misconduct, we considered four cases—one imposing a one-year stayed suspension and three imposing six-month stayed suspensions. *Id*. at ¶ 13-19. In *Cuyahoga Cty. Bar Assn. v. Poole*, 120 Ohio St.3d 361, 2008-Ohio-6203, 899 N.E.2d 950, we imposed a one-year suspension, stayed on conditions, for an attorney's neglect of two client matters, failure to reasonably communicate with clients, failure to refund their retainers until the clients initiated disciplinary proceedings, and failure to cooperate in the ensuing disciplinary investigation. In *Cleveland Bar Assn. v. Norton*, 116 Ohio St.3d 226, 2007-Ohio-6038, 877 N.E.2d 964, we imposed a six-month suspension, stayed on conditions, for a remorseful attorney's neglect of two client

matters, failure to reasonably communicate with clients, and failure to cooperate in disciplinary proceedings, upon a finding that his misconduct was due mainly to poor organizational skills. In *Cuyahoga Cty. Bar Assn. v. Sherman*, 101 Ohio St.3d 158, 2004-Ohio-340, 803 N.E.2d 398, we imposed a six-month stayed suspension for neglect of a single client matter, failure to reasonably communicate with the client, and failure to maintain client funds in a separate, identifiable bank account. And in *Dayton Bar Assn. v. Sebree*, 96 Ohio St.3d 50, 2002-Ohio-2987, 770 N.E.2d 1009, we imposed a six-month stayed suspension for neglect and failure to communicate with two clients that was attributable to a busy practice, poor office procedures, and a lack of guidance.

{¶ 17} Although Hooks's misconduct affected just one client, while *Brown*, *Poole*, *Norton*, and *Sebree* each involved a pattern of misconduct affecting at least two clients, the conduct at issue here is comparable to the conduct in those cases. Therefore, we agree that a six-month suspension, all stayed on the conditions recommended by the board, is the appropriate sanction for his misconduct.

{¶ 18} Accordingly, Shawn Patrick Hooks is suspended from the practice of law in Ohio for six months, all stayed on the conditions that he (1) complete 12 hours of continuing legal education in law-office management with instruction regarding office organization, time and task management, and basic software aids for case management before expiration of the six-month suspension, (2) submit to an evaluation by OLAP within three months of the date of this order and enter into and comply with any follow-up contract deemed necessary by OLAP, (3) participate in a one-year mentoring program with a mentor approved by relator, and (4) commit no further misconduct. If Hooks fails to comply with these conditions, the stay will be lifted, and he will serve the entire six-month suspension. Costs are taxed to Hooks.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Dianne F. Marx, for relator.

Shawn Patrick Hooks, pro se.

_____