**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cleveland Metro. Bar Assn. v. Sweeney,* **Slip Opinion No. 2016-Ohio-469.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-469

CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* SWEENEY.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cleveland Metro. Bar Assn. v. Sweeney,* **Slip Opinion No. 2016-Ohio-469.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Public reprimand.*

(No. 2015-0591—Submitted May 20, 2015—Decided February 11, 2016.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2014-026.

_____

**Per Curiam.**

{¶ 1} Respondent, Francis Edward Sweeney Jr., of Mayfield Heights, Ohio, Attorney Registration No. 0058723, was admitted to the practice of law in Ohio in 1992. On April 7, 2014, relator, Cleveland Metropolitan Bar Association, filed a complaint alleging that Sweeney neglected a client matter, failed to communicate with the client, failed to effectuate his withdrawal from representation with minimal

adverse effects on the clients, and failed to take reasonable steps to protect his clients' interests when terminating the attorney-client relationship. A panel of the Board of Commissioners on Grievances and Discipline[1] held a hearing at which the parties submitted exhibits and the client, her Florida counsel, Sweeney, and a character witness testified. The panel recommended that a fully stayed six-month suspension was the appropriate sanction for Sweeney's misconduct. The board adopted the panel report in its entirety.

{¶ 2} After reviewing the record, we adopt the board's findings of fact and misconduct, but we reject the recommended sanction. We instead conclude that a public reprimand is appropriate under these circumstances.

## Misconduct

{¶ 3} Sweeney was retained in April 2005 to represent Heidi DeCaprio and her minor daughter, who were injured in an automobile accident in Florida. He performed substantial work but was unable to settle the matter, so in May 2006, he referred his clients to Florida attorney James Magazine. Magazine's firm filed a lawsuit in January 2009 and remained as counsel until May 2011, when the firm withdrew due to a conflict of interest. The clients were then referred to Michael Walker of Walker Law Group, another Florida firm.

{¶ 4} Three months later, in August 2011 and more than six years after the accident, the Walker firm withdrew because of DeCaprio's failure to cooperate. In particular, the Walker firm's case notes indicated that DeCaprio failed to return counsel's calls, was verbally abusive and rude in telephone conversations with attorneys and staff, refused to work with staff to get her deposition scheduled, and had an unrealistic view of the value of her case. At the time of Walker's withdrawal, the firm had presented to DeCaprio an offer of settlement, which DeCaprio never acted upon. Following Walker's withdrawal, DeCaprio contacted

---

[1] Effective January 1, 2015, the Board of Commissioners on Grievances and Discipline has been renamed the Board of Professional Conduct. *See* Gov.Bar. R. V(1)(A), 140 Ohio St.3d CII.

Sweeney and in December 2011, Sweeney personally resumed his efforts to settle the case from Ohio.

{¶ 5} The issue before us is whether and when, in the history of this matter, an attorney-client relationship existed between Sweeney and DeCaprio and her daughter, and if one did exist, whether Sweeney committed any misconduct in that representation.

{¶ 6} Relator did not show that Sweeney committed any misconduct during the period when the lawsuit was handled by the Florida firms. In the wake of the Walker firm's withdrawal, however, Sweeney's activity in the case arose again. DeCaprio sought Sweeney's counsel. They communicated through text messages. She faxed legal documents to him, including, on December 1, 2011, the defendant's motion to dismiss her case—based on DeCaprio's failure to respond to discovery requests—and proposals for settlement.

{¶ 7} Sweeney was aware in mid-December that Walker's motion to withdraw had been granted. Sweeney requested copies of DeCaprio's medical bills from the Walker firm, which sent them to him on December 20, 2011. The firm's contemporaneous notes from Sweeney's mid-December contact with the firm stated that the staff had received a call "from atty * * * Sweeney who was approached by Ms. DeCaprio to handle her case again." Sweeney placed a call to the insurance adjuster in late December to try to settle the matter. And in late December, Sweeney texted DeCaprio that he was "trying to settle it."

{¶ 8} A hearing on the motion to dismiss had been set for January 10, 2012. Sweeney texted DeCaprio on December 30, 2011: "Got it covered. U don't have to be there. I am coordinating it thru Magazine. No worries. Happy new year." On the day of the hearing, Sweeney texted: "We will work it out. No worries." The next day, after the motion to dismiss had been granted, he texted: "Patience" and "[Magazine] will be calling u and explaining what we are going to do. I'm pretty sure we are going to be ok. Just don't freak out yet!"

**{¶ 9}** On January 12, 2012, however, the relationship changed. Sweeney texted DeCaprio, "I just found out you ignored several motions to compel answers to intterroigatorries [sic] over 2 years ago. Not only have you not been listening to me and Magazine U screwed yourself by no [sic] listening to anyone. I can't help u anymore. Call walker if u have questions. Sorry."

**{¶ 10}** The panel and board found from these and other communications that Sweeney had become actively involved in DeCaprio's case and that he took several concrete actions on her behalf in December 2011 and January 2012. The board also found that Sweeney gave DeCaprio flawed advice not to attend the dismissal hearing and that after the January 12 message, Sweeney—after having already failed to arrange for an attorney to attend the dismissal hearing—failed to apprise DeCaprio that she could petition the court for reconsideration or appeal the dismissal.

**{¶ 11}** The board found that Sweeney's conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a) (requiring a lawyer to reasonably communicate with a client), 1.16(b)(1) (permitting a lawyer to withdraw from representation if the withdrawal can be accomplished without material adverse effect on the interests of the client), and 1.16(d) (requiring a lawyer withdrawing from representation to take steps reasonably practicable to protect a client's interest). We adopt the board's findings of fact and misconduct.

### Sanction

**{¶ 12}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Gov.Bar R. V(13).

**{¶ 13}** The board found as aggravating factors that Sweeney committed multiple offenses that caused harm to multiple victims who were vulnerable. *See* Gov.Bar R. V(13)(B)(4) and (8). As mitigating factors, the board found that Sweeney had no prior disciplinary record, had displayed a cooperative attitude toward these proceedings, and had presented abundant evidence of his good character and of his reputation for, and record of, professionalism and service to his clients and the greater community. *See* Gov.Bar R. V(13)(C)(1), (4) and (5).

**{¶ 14}** Relator recommends that Sweeney receive a fully stayed six-month suspension from the practice of law. In support of that recommendation, relator cites several cases involving comparable conduct in which we imposed a comparable sanction, including *Cleveland Metro. Bar Assn. v. Fonda*, 138 Ohio St.3d 399, 2014-Ohio-850, 7 N.E.3d 1164, and *Dayton Bar Assn. v. Hooks*, 139 Ohio St.3d 462, 2014-Ohio-2596, 12 N.E.3d 1212. In *Fonda*, we imposed a stayed one-year suspension for a violation of Prof.Cond.R. 1.3, 1.4(a)(3) and (4), and 1.16(d) where the respondent had neglected two clients' cases, as opposed to the single matter here, and had failed to take reasonable steps to protect one client's interests when he withdrew as counsel. And in *Hooks*, we imposed a stayed six-month suspension and 12 hours of continuing legal education for a violation of Prof.Cond.R. 1.3 and 1.4 where the respondent had failed to file documents regarding modification of a client's child-support obligation and had failed to keep the client reasonably informed as to the status of his case. The respondent there admitted that he had been charged with operating a vehicle while intoxicated, which was a charge that was not one of the disciplinary charges against him, and we required that he submit to an evaluation by the Ohio Lawyers Assistance Program to ensure that no underlying problems existed. Neither of those factors is present here.

**{¶ 15}** Sweeney argues that his conduct warrants a public reprimand, and we are inclined to agree. In *Akron Bar Assn. v. Freedman*, 128 Ohio St.3d 497,

2011-Ohio-1959, 946 N.E.2d 753, the respondent failed to timely communicate with a couple who had retained him, failed to keep them reasonably informed about the status of their case, failed to inform them that he did not maintain professional liability insurance, and failed to advise them that if he did not complete the representation, they could be entitled to a refund of part or all of the flat fee they had paid him, thus violating Prof.Cond.R. 1.4, 1.4(c), and 1.5(d)(3). The mitigation factors were similar to those here, including that the respondent had practiced for nearly 30 years without a disciplinary record. *Id.* at ¶ 8. We determined that the respondent's conduct warranted a public reprimand. *Id.* at ¶ 12.

**{¶ 16}** In *Columbus Bar Assn. v. Smith*, 143 Ohio St.3d 436, 2015-Ohio-2000, 39 N.E.3d 488, ¶ 5-6, the respondent violated Prof.Cond.R. 1.3, 1.4(a)(2) through (4), and 1.16(d) by filing a responsive pleading late, failing to present all of a client's claims, not taking steps to protect a client's interests after moving to withdraw as counsel, and not timely communicating with a client about or providing copies of a federal magistrate judge's recommendation. The mitigating factors were similar to those here, *see id.* at ¶ 8, and we publicly reprimanded Smith for her misconduct, *id.* at ¶ 11. And in *Columbus Bar Assn. v. Ryan*, 143 Ohio St.3d 73, 2015-Ohio-2069, 34 N.E.3d 120, ¶ 1, the respondent was difficult to contact, did not timely file court papers although she represented to the client that they had been filed, and failed to communicate with the client in a domestic-relations matter. With similar mitigating and aggravating factors as here, *see id.* at ¶ 4, we determined that the conduct warranted a public reprimand, *id.* at ¶ 7.

**{¶ 17}** We adopt the board's findings and conclude that Sweeney's conduct violated Prof.Cond.R. 1.3, 1.4(a), 1.16(b)(1), and 1.16(d). Considering Sweeney's long career with no previous disciplinary action, the appropriate sanction here is a public reprimand.

**{¶ 18}** Accordingly, Francis Edward Sweeney Jr. is hereby publicly reprimanded. Costs are taxed to Sweeney.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Tucker Ellis, L.L.P., Matthew P. Moriarty, and Paul W. Smith; and Heather M. Zirke, Assistant Bar Counsel, for relator.

Kegler, Brown, Hill & Ritter Co., L.P.A., and Jonathan E. Coughlan, for respondent.

_____