**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Columbus Bar Assn. v. McCarty*, **Slip Opinion No. 2024-Ohio-4940.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-4940

COLUMBUS BAR ASSOCIATION *v.* MCCARTY.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus Bar Assn. v. McCarty*, Slip Opinion No. 2024-Ohio-4940.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including failing to deposit into a client trust account advance legal fees and expenses to be withdrawn by the lawyer only as fees are earned or expenses incurred—Conditionally stayed six-month suspension.*

(No. 2024-1103—Submitted September 3, 2024—Decided October 16, 2024.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2023-040.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, and DETERS, JJ. BRUNNER, J., did not participate.

**Per Curiam.**

{¶ 1} Respondent, Kevin Richard McCarty, of Groveport, Ohio, Attorney Registration No. 0059226, was admitted to the practice of law in Ohio in 1992.

{¶ 2} On November 17, 2023, relator, Columbus Bar Association, filed a three-count complaint with the Board of Professional Conduct alleging that McCarty neglected client matters, failed to reasonably communicate with clients, and failed to protect clients' interests upon the termination of the representation. Relator also alleged that McCarty failed to properly deposit funds into and maintain records for his client-trust account.

{¶ 3} McCarty waived a probable-cause determination, and the parties submitted a consent-to-discipline agreement recommending that McCarty be suspended for one year, fully stayed on conditions. That agreement was rejected by a panel of the board, and the parties then entered into stipulations of fact and misconduct.

{¶ 4} After a hearing, the panel found that McCarty committed some of the professional conduct alleged in the complaint but unanimously dismissed other alleged rule violations. It then recommended that McCarty be suspended for six months, with the suspension fully stayed on conditions. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction.

{¶ 5} After a thorough review of the record, we adopt the board's findings of fact and misconduct and its recommended sanction. We suspend McCarty from the practice of law in Ohio for six months, with the suspension fully stayed on the conditions that he engage in no further misconduct, complete six hours of continuing legal education ("CLE") focused on law-office and client-trust-account management, and serve a one-year period of monitored probation.

## I. MISCONDUCT

### A. *The Pratt Matter*

{¶ 6} On March 2, 2022, Pamela Pratt retained McCarty to manage the administration of her mother's estate. The representation initially focused on obtaining access to Pratt's mother's safety-deposit box at a bank in Ashville, Ohio, as Pratt believed it might contain her mother's will and a real-estate transfer-on-death affidavit. McCarty did not have Pratt sign a retention or fee agreement, but she did agree to pay McCarty a quoted fee of $400 for the representation.

{¶ 7} On March 7, Pratt returned to McCarty's office for a second meeting and signed paperwork required to be appointed commissioner. She needed that appointment to inventory her mother's safety-deposit box. Pratt also provided McCarty with her mother's will and transfer-on-death affidavit, which had been found by Pratt's daughter-in-law prior to the meeting. Additionally, Pratt paid McCarty another $850 to prepare a deed transferring her mother's home to her and to file the paperwork for Pratt to be appointed executor of her mother's estate. During the meeting, McCarty informed Pratt that he would be out of the office later in March for a trip to Florida. Pratt understood that McCarty would be back from Florida on April 17.

{¶ 8} On March 17, Pratt received a call from the Pickaway County Probate Court informing her that the paperwork for her commissioner appointment had been received but that the fees included with the paperwork were insufficient. Pratt therefore had to miss a day of work to travel to the court to pay the additional amount needed to obtain her appointment. After receiving her commission, Pratt visited the bank on March 25, to review and inventory the contents of the safety-deposit box.

{¶ 9} Pratt attempted to contact McCarty in mid-April to follow up on the representation. However, she learned that McCarty's phone number had changed

and found McCarty's office "cleared out" when she visited it. Pratt had no other means to contact McCarty.

{¶ 10} Unable to reach McCarty and concerned for his well-being, Pratt went to the Groveport Police Department for assistance, but the police could not find a forwarding address or any additional information regarding McCarty's whereabouts. Unbeknownst to Pratt, McCarty had begun a full-time position as the mediation supervisor at the Franklin County Court of Common Pleas at the end of March.

{¶ 11} McCarty's departure from private practice without telling Pratt delayed the administration of her mother's estate, and she incurred additional expenses—including property taxes and upkeep for her mother's home—before she retained a new attorney. Pratt's new counsel had to complete the work McCarty had started, as McCarty did not perform any work for the $850 payment from Pratt.

{¶ 12} McCarty did not communicate with Pratt about the estate matter after he returned to private practice in May 2022, but on December 29, 2022, he did return the $1,250.00 he had accepted from Pratt.

{¶ 13} Based on the evidence presented at the hearing and the stipulations of the parties, the board found by clear and convincing evidence that McCarty violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed about the status of a matter), and 1.16(d) (requiring a lawyer withdrawing from representation to take steps reasonably practicable to protect a client's interest). The board dismissed charges for alleged violations of Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), 1.4(b) (requiring a lawyer to explain a matter to the extent reasonably necessary for a client to make informed decisions regarding the representation), 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee), and 1.5(b) (requiring an attorney to communicate the nature and

scope of the representation and the basis or rate of the fee and expenses within a reasonable time after commencing the representation unless the lawyer regularly represented the client and will charge the client on the same basis as previously charged).

*B. McCarty's Client Trust Account*

**{¶ 14}** During its investigation into the Pratt matter, relator requested that McCarty produce a copy of his Interest on Lawyers' Trust Accounts ("IOLTA") ledger for all client transactions that occurred in 2022. In response, McCarty produced only one handwritten ledger dated "December 2022" that contained four client names (including Pratt) alongside the fees he received from them. For Pratt, the ledger had a single line indicating that Pratt paid McCarty $1,250 on "June 28." This amount did not separate the $400 and $850 payments that Pratt made to McCarty on March 2 and March 7, 2022, respectively.

**{¶ 15}** Relator then asked McCarty to produce his Chase Bank IOLTA account statements for January through November 2022. The statements did not show that McCarty had deposited the $400 or $850 payments Pratt made. The statements did, however, include a $270,029.98 deposit on June 30, which McCarty identified as the proceeds from the sale of his residence. McCarty indicated that he did not remember his personal bank information at the time of sale and that he therefore gave the agent his IOLTA-account information to complete the closing. McCarty then began to make withdrawals from his IOLTA account, with checks written to himself and deposited into a personal account he kept at Huntington National Bank.

**{¶ 16}** Relator subpoenaed Huntington National Bank and Chase Bank for records related to McCarty's personal and trust accounts, including monthly statements, checks, and deposits. Relator thereby discovered that the majority of the checks written from or deposited into the IOLTA account had not been recorded in the trust ledger that McCarty had provided to relator.

{¶ 17} Twenty checks deposited into McCarty's personal account consisted of refund checks for clients' overpayments of costs to clerks of court and a county auditor. Neither the 2022 IOLTA trust ledger nor the statements from either the IOLTA or McCarty's personal account show that these funds were returned to clients. McCarty did, however, made full restitution to the affected clients following the filing of the complaint in this matter.

{¶ 18} Based on the evidence presented at the hearing and the stipulations of the parties, the board found by clear and convincing evidence that McCarty violated Prof.Cond.R. 1.15(b) (permitting a lawyer to deposit his or her own funds into a client trust account for the sole purpose of paying or obtaining a waiver of bank service charges), 1.15(c) (requiring a lawyer to deposit advance legal fees and expenses into a client trust account, to be withdrawn by the lawyer only as fees are earned or expenses incurred), and 1.15(d) (requiring a lawyer to promptly deliver funds or other property that a client is entitled to receive). The board dismissed a charge for an alleged violation of Prof.Cond.R. 1.15(a) (requiring a lawyer to hold funds belonging to a client or third party in a client trust account separately from his own property).

### C. The Shaner Matter

{¶ 19} In December 2020, Jennifer Shaner retained McCarty to represent her in a divorce action filed by Shaner's then-husband. Shaner paid McCarty a $1,000 retainer for the representation, but McCarty's IOLTA records do not show that any deposits were made into the account during December 2020 or January 2021.

{¶ 20} Based on the evidence presented at the hearing and the stipulations of the parties, the board found by clear and convincing evidence that McCarty violated Prof.Cond.R. 1.15(c). The board dismissed charges for alleged violations of Prof.Cond.R. 1.5(b), 1.15(a), 1.16, and 3.3(a) (prohibiting a lawyer from making a false statement to a tribunal).

## II. SANCTION

{¶ 21} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 22} The board found two aggravating factors in this case: (1) a pattern of misconduct and (2) multiple offenses. *See* Gov.Bar R. V(13)(B)(3) and (4). As for mitigating factors, the board found that McCarty (1) had no prior disciplinary record, (2) had not acted with a dishonest or selfish motive, (3) had made timely restitution to clients, and (4) had displayed a cooperative attitude toward the disciplinary proceedings. *See* Gov.Bar R. V(13)(C)(1) through (4).

{¶ 23} The board recommends that we suspend McCarty from the practice of law for six months, with the suspension fully stayed on the conditions that he (1) engage in no further misconduct, (2) complete six hours of CLE focused on law-office and IOLTA management in addition to the requirements of Gov.Bar R. X, and (3) complete a one-year term of monitored probation under Gov.Bar R. V(21), with monitoring focused on law-office and IOLTA management.

{¶ 24} In making this recommendation, the board relied on *Mahoning Cty. Bar Assn. v. Malvasi*, 2015-Ohio-2361; *Dayton Bar Assn. v. Wilcoxson*, 2018-Ohio-2699; and *Dayton Bar Assn. v. Hooks*, 2014-Ohio-2596.

{¶ 25} The attorney in *Malvasi* was retained to represent a couple in a real-estate action. The couple paid Malvasi a $2,500 retainer, which Malvasi failed to deposit into his IOLTA account. Malvasi then failed to file a complaint or contact the opposing parties about a potential settlement for approximately 11 months. During this time, Malvasi had little contact with the couple. Almost a year after he was retained, Malvasi informed the couple that he had not yet filed the lawsuit, yet he continued to take no further action on their behalf to file the complaint.

**{¶ 26}** We concluded that Malvasi's misconduct violated Prof.Cond.R. 1.3, 1.4(a)(3), 1.4(a)(4), and 1.15(c). *Id.* at ¶ 4. There were no aggravating factors, while mitigation included the absence of prior discipline, the lack a of dishonest or selfish motive, a good-faith effort to make restitution and rectify the consequences of the misconduct, a cooperative attitude toward the disciplinary proceedings, and evidence of good character and reputation. *Id.* at ¶ 6. We imposed a six-month suspension, stayed on the conditions that Malvasi commit no further misconduct, serve a one-year term of monitored probation, and complete a seminar on law-office management. *Id.* at ¶ 10.

**{¶ 27}** The attorney in *Wilcoxson*, 2018-Ohio-2699, was retained to represent a client in a federal employment-discrimination lawsuit. The client agreed to pay a $1,000 retainer plus a $400 filing fee but gave Wilcoxson only $500. Despite the client's failure to pay the full amount promised, Wilcoxson filed suit—but not until four days after the filing deadline. He did not inform the client about the status of the case until after it was dismissed. The client then retained a new attorney, but Wilcoxson disregarded requests to turn over the client's file.

**{¶ 28}** We concluded that Wilcoxson's misconduct violated Prof.Cond.R. 1.3, 1.4(a)(3), 1.16(d), 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation), and 8.4(a) (prohibiting a lawyer from violating or attempting to violate the Rules of Professional Conduct). *Id.* at ¶ 13. We found as an aggravating factor that Wilcoxson had failed to notify the client that he did not have professional-liability insurance, while mitigation included the absence of prior discipline, the lack of a dishonest or selfish motive, payment of restitution, and evidence of good character and reputation. *Id.* at ¶ 8. We imposed a six-month suspension, stayed on the condition that Wilcoxson engage in no further misconduct. *Id.* at ¶ 13-14.

{¶ 29} In *Hooks*, 2014-Ohio-2596, a client living in Tennessee retained the attorney to seek a modification of a child-custody and child-support order. The client paid Hooks a $1,500 retainer and sent him the necessary paperwork, but Hooks never filed the documents seeking the modification. Additionally, Hooks failed to respond to the client's repeated calls and messages, and the client therefore had to pay child support for a child that was then living with him. Eventually, Hooks's neglect of the matter led the client to file a grievance with the Dayton Bar Association.

{¶ 30} We concluded that Hooks's misconduct violated Prof.Cond.R. 1.3 and 1.4. *Id.* at ¶ 9. One aggravating factor—that Hooks committed multiple offenses—was present, while mitigation included the absence of prior discipline, the lack of a dishonest or selfish motive, and acceptance of responsibility for the misconduct. *Id.* at ¶ 12. We imposed a six-month suspension, stayed on the conditions that Hooks complete 12 hours of CLE in law-office management, submit to an evaluation by the Ohio Lawyers Assistance Program ("OLAP") within three months of our order, participate in a one-year mentoring program, and commit no further misconduct. *Id.* at ¶ 18.

{¶ 31} In addition to the cases relied on by the board, *Wood Cty. Bar Assn. v. Driftmyer*, 2018-Ohio-5094, is instructive. Driftmyer was retained to defend a client against criminal charges that included rape. The client paid Driftmyer the agreed fee of $5,000 in two installments as well as an additional $3,200 to pay for a private investigator. The client was convicted and filed a grievance against Driftmyer, alleging ineffective assistance of counsel. During Driftmyer's disciplinary hearing, it was discovered that she had never tried a rape case before, was unprepared to defend her client at trial, and failed to disclose crucial defense witnesses to the State. Further, Driftmyer failed to deposit $2,500 of the client's fee into her client trust account.

**{¶ 32}** We concluded that Driftmyer's misconduct violated Prof.Cond.R. 1.3, 1.4(c), 1.15(a), 1.15(a)(1), and 8.1(b). *Id.* at ¶ 12. Two aggravating factors were present: Driftmyer committed multiple offenses and failed to cooperate in the disciplinary process. *Id.* at ¶ 14. Mitigation included the absence of prior discipline, the lack of a dishonest or selfish motive, and evidence of good character and reputation. *Id.* We imposed a six-month suspension, stayed on the conditions that Driftmyer submit to an OLAP assessment, comply with treatment recommendations resulting from it, establish and utilize a client trust account, obtain professional-liability insurance or else notify clients that she does not carry it, complete 12 hours of CLE in criminal-trial practice and 6 hours of CLE in law-office management, engage in no further misconduct, and serve a one-year term of monitored probation. *Id.* at ¶ 22.

**{¶ 33}** We agree with the board that McCarty's misconduct in this case— his violations of Prof.Cond.R. 1.3, 1.4(a)(3), 1.16(d), 1.15(b), 1.15(c), and 1.15(d)—is comparable to the attorneys' misconduct in *Malvasi*, *Wilcoxson*, and *Hooks*. Like McCarty in the Pratt matter, the attorneys in those cases were sanctioned for their mishandling of a single client's matter in which they failed to diligently work for and reasonably communicate with the client. Additionally, in *Malvasi* and *Driftmyer*, the client-matter misconduct was coupled with IOLTA-account violations. In each of these cases, we imposed a six-month suspension stayed on conditions. We therefore agree with the board that this is the appropriate sanction for McCarty's misconduct.

**{¶ 34}** Imposition of this sanction does not diminish the fact that McCarty abandoned a client when he temporarily left private practice. However, "the primary purpose of attorney discipline is not to punish the offender but to protect the public against members of the bar who are unworthy of the trust and confidence essential to the attorney-client relationship." *Disciplinary Counsel v. Carter*, 2023-Ohio-3992, ¶ 31. And after a review of the record and our applicable precedent,

we are convinced that suspending McCarty from the practice of law for six months, with the entire suspension stayed on conditions, is sufficient to protect the public from further misconduct.

### III. CONCLUSION

{¶ 35} Accordingly, Kevin McCarty is suspended from the practice of law for six months, with the suspension stayed in its entirety on the conditions that he (1) engage in no further misconduct, (2) complete six hours of CLE focused on law-office and client-trust-account management in addition to the requirements of Gov.Bar R. X, and (3) serve a one-year period of monitored probation in accordance with Gov.Bar R. V(21) focused on law-practice and client-trust-account management. If McCarty fails to comply with a condition of the stay, the stay will be lifted and he will serve the full six-month suspension. Costs are taxed to McCarty.

Judgment accordingly.

_____

Kent R. Markus and Holly N. Wolf, Bar Counsel; and Jyoshu Tsushima, Legal Aid Society of Columbus, for relator.

Holly Marie Wilson, Reminger Co., L.P.A., for respondent.

_____