**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Wilson*, **Slip Opinion No. 2026-Ohio-165.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-165

DISCIPLINARY COUNSEL *v.* WILSON.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Wilson*,**

**Slip Opinion No. 2026-Ohio-165.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including lack of diligent representation and prompt communication, trust-account mishandling, and failure to withdraw from representation so that client's interests are protected—Six-month suspension, fully stayed on conditions.*

(No. 2025-1000—Submitted September 16, 2025—Decided January 22, 2026.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2024-043.

_____

The per curiam opinion below was joined by DEWINE, WILKIN, HAWKINS, and SHANAHAN, JJ. KENNEDY, C.J., concurred in part and dissented in part, with an opinion joined by FISCHER and HUFFMAN, JJ. KRISTY S. WILKIN, J., of the Fourth District Court of Appeals, sat for BRUNNER, J. MARY KATHERINE HUFFMAN, J., of the Second District Court of Appeals, sat for DETERS, J.

**Per Curiam.**

{¶ 1} Respondent, Darnell Maurice Wilson, of Cincinnati, Ohio, Attorney Registration No. 0096352, was admitted to the practice of law in Ohio in 2017.

{¶ 2} In a December 2024 complaint, relator, disciplinary counsel, charged Wilson with ten violations of the Rules of Professional Conduct arising out of his representation of a single client. Among other things, relator alleged that Wilson had neglected the client's legal matter, failed to comply with a proper discovery request, and failed to reasonably communicate with the client, properly handle the client's retainer, seek court permission to withdraw from the representation, and take reasonably practicable steps to protect the client's interest upon his withdrawal. Wilson waived a probable-cause determination.

{¶ 3} The parties entered into stipulations of fact in which they agreed that Wilson had committed seven of the charged rule violations. The parties also stipulated to aggravating and mitigating factors and submitted 35 stipulated exhibits. Wilson submitted four additional exhibits.

{¶ 4} Wilson and his former client testified at a hearing before a three-member panel of the Board of Professional Conduct. After the hearing, the panel unanimously dismissed three disputed rule violations, finding that relator had failed to prove them by clear and convincing evidence.

{¶ 5} The panel later issued a report in which it found by clear and convincing evidence that Wilson had committed the seven rule violations to which he stipulated. The panel recommended that he be suspended from the practice of law for six months, stayed in its entirety on the conditions that he commit no further misconduct and complete a one-year term of monitored probation. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction. No objections have been filed.

{¶ 6} After independently reviewing the record and our precedent, we adopt the board's findings of misconduct and suspend Wilson from the practice of law

for six months with the suspension stayed in its entirety on the conditions that he commit no further misconduct and complete a one-year term of monitored probation in accordance with Gov.Bar R. V(21).

## FINDINGS OF FACT AND MISCONDUCT

{¶ 7} Wilson commenced his solo law practice in 2018. In need of legal counsel, Zola Stewart sought Wilson's assistance in February 2020. Wilson agreed to represent Stewart at an hourly rate of $150, to be billed against a $1,500 retainer. In late February, Wilson texted Stewart, inquiring about the retainer. They exchanged several more text messages in which Stewart informed Wilson that she had the money and would send it to him electronically and Wilson agreed to email Stewart a fee agreement. In early March, Stewart signed a fee agreement and paid Wilson's retainer in two installments through an electronic-payment system, Cash App, which was linked to Wilson's firm's operating account. Wilson did not transfer the funds into either of his two client trust accounts.

{¶ 8} Stewart was the owner and statutory agent of Focus Solutions, Inc., a privately held Ohio corporation. Through Focus Solutions, Stewart contracted with the Metropolitan Sewer District of Greater Cincinnati to provide consulting services regarding efforts to engage local minority-owned small businesses in government contracts.

{¶ 9} In November 2019, the Hamilton County Board of County Commissioners filed a complaint against Stewart and Focus Solutions on behalf of the sewer district, alleging the submission of false invoices. *See Hamilton Cty. Bd. of Cty. Commrs. v. Focus Solutions, Inc.*, Hamilton C.P. No. A1905324 (Nov. 7, 2019). Two alleged former employees of the sewer district were also named as defendants. The allegations in the complaint were based on the findings of a special audit conducted by the Ohio auditor of state and charged that Stewart, as the president of Focus Solutions, had, on 23 different occasions, billed the sewer district for more than 24 hours of work in a single day.

**{¶ 10}** Wilson filed an answer to the complaint on March 7, 2020. Shortly thereafter, the Hamilton County courts restricted their operations because of the COVID-19 pandemic. In February 2021, the Hamilton County Court of Common Pleas consolidated the case against Stewart and Focus Solutions with several other cases that had been filed by the county commissioners arising out of the same special audit. Although Wilson did not file the motion to consolidate the cases, he attended the hearing and provided email authority for the moving party to sign his name to the proposed consolidation order, underscoring that he did not oppose the motion.

**{¶ 11}** On May 4, 2021, the county commissioners served discovery requests on Wilson. In response to relator's letter of inquiry regarding the grievance that Stewart filed against him in December 2023, Wilson said that he mailed a copy of the discovery requests to Stewart on May 11 at her residential address. He also said that on May 31, he mailed Stewart an invoice for outstanding legal fees in the amount of $2,396.50. During Wilson's disciplinary hearing, Stewart testified that she never received the discovery requests or the invoice. Despite having previously and successfully communicated with Stewart by text message, Wilson stipulated that he never sent Stewart a text message regarding the discovery requests or the alleged outstanding legal fees.

**{¶ 12}** In mid-July 2021, Wilson exchanged several emails with the assistant county prosecutor assigned to Stewart's case regarding the pending discovery requests. Wilson represented that he and Stewart were working on the discovery and had obtained a 30-day extension of time in which to complete their responses. However, Wilson had no contact with Stewart from October 2020 until August 24, 2021—when he exchanged several text messages with her to schedule a Zoom meeting.

**{¶ 13}** Stewart reached out to Wilson by text message on the day of their scheduled meeting, but Wilson did not respond until the next day, at which time he

informed Stewart that he had just recovered his phone, which he had lost at the courthouse. A few days later, Stewart and Wilson exchanged additional text messages in which Stewart requested a copy of the complaint that had been filed against her and scheduled a time to talk with Wilson by phone. But Wilson did not send her the complaint, and the scheduled phone conversation did not take place.

{¶ 14} Wilson testified that he mailed a second copy of the discovery requests to Stewart sometime in September 2021, though he did not provide relator with a copy of that correspondence and Stewart testified that she never received the discovery requests. Wilson acknowledged that he never responded to the discovery requests on Stewart's behalf and that he stopped working on her case altogether in September 2021.

{¶ 15} Wilson testified that he sent Stewart a letter at the end of September 2021, informing her that he was withdrawing from her case because she had not paid her legal fees. But Stewart never received that letter or any other communication regarding Wilson's alleged withdrawal. And although Wilson was aware that a local rule provides that an attorney of record "shall not be permitted to withdraw except upon motion and for good cause shown," *see* Hamilton C.P., Gen.Div., Loc.R. 10(F), he never moved the common pleas court for permission to withdraw as counsel for Stewart and Focus Solutions. Nor did he communicate his alleged intent to withdraw to the assistant county prosecutor or any other attorney involved in the consolidated case. Consequently, Wilson continued to receive emails, pending motions, and court notices regarding the case.

{¶ 16} On October 28, 2021, the county commissioners filed a motion for default judgment against Stewart and Focus Solutions, asking the common pleas court to issue either an order compelling discovery or, alternatively, to enter a default judgment against them and issue an order striking their defenses. The assistant county prosecutor served the motion on Wilson because he was still the attorney of record, and although Wilson received the motion, he failed to inform

Stewart of it. Wilson also failed to inform opposing counsel that he was no longer working on the case. He neither filed a response to the motion nor appeared at the hearing on the motion.

{¶ 17} The common pleas court entered a default judgment against Stewart and Focus Solutions for $163,261 plus interest in the amount of $20,649.07, for a total of $183,910.07. But Wilson did not notify Stewart of the judgment, and because Wilson remained counsel of record, Stewart did not receive any notices from the court.

{¶ 18} In November 2023, Stewart received her first order and notice of garnishment. Believing that Wilson still represented her, though she had not communicated with him in more than two years, she attempted to reach him by email, phone, and text message, seeking an explanation for the garnishment. But Wilson never responded to her inquiries. At the disciplinary hearing, Stewart explained the more than two-year gap in her communication with Wilson by saying, "No news was—was good news for me." By November 1, 2024, Stewart's employer had withheld more than $20,000 from her earnings under the common pleas court's garnishment order.

{¶ 19} In December 2023, Stewart filed a grievance against Wilson with relator. She sent Wilson a letter by regular mail in March 2024 terminating his services and requesting her file. She later sent the same letter by certified mail. But Wilson did not respond to either letter.

{¶ 20} The parties stipulated and the board found by clear and convincing evidence that Wilson's conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(1) (requiring a lawyer to promptly inform the client of any decision or circumstance with respect to which the client's informed consent is required), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 1.15(c) (requiring a lawyer to deposit advance legal fees and expenses into a client trust account, to be

withdrawn by the lawyer only as fees are earned or expenses incurred), 1.16(c) (prohibiting a lawyer from withdrawing from representation in a proceeding without leave of court if the rules of the tribunal so require), 1.16(d) (requiring a lawyer withdrawing from representation to take steps reasonably practicable to protect the client's interest), and 3.4(d) (prohibiting a lawyer from failing to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party).  We adopt these findings of misconduct.

## SANCTION

{¶ 21} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 22} In this case, the parties stipulated and the board found that two aggravating factors are present: Wilson committed multiple offenses and harmed a vulnerable victim.  *See* Gov.Bar R. V(13)(B)(4) and (8).  Mitigating factors stipulated by the parties and found by the board consist of the absence of prior discipline and Wilson's cooperative attitude toward the disciplinary proceedings.  *See* Gov.Bar R. V(13)(C)(1) and (4).

{¶ 23} In addition, the board found by clear and convincing evidence that Wilson suffered from a mental condition that affected his representation of Stewart.  Wilson submitted a letter from his treating psychiatrist stating that Wilson had been diagnosed with a major depressive disorder for which he had been receiving treatment from the United States Department of Veterans Affairs since 2011.  The psychiatrist stated that Wilson's mental condition during the relevant period was exacerbated by the untimely death of his only brother, the death of his mother, and his divorce.  She further opined that Wilson's symptoms were well controlled, that his overall prognosis was good, and that she had no concerns regarding his ability

to practice law going forward. The board therefore found that Wilson's mental disorder qualified as a mitigating factor. *See* Gov.Bar R. V(13)(C)(7).

{¶ 24} We note that in his disciplinary-hearing testimony, Wilson accepted full responsibility for his misconduct, stating, "I am not here to defend the indefensible. I'm here today . . . to take accountability for some gross errors that . . . were . . . committed on my part." He admitted that he made missteps and mistakes and that his failure to be diligent in his representation of Stewart "contribute[d] to a terrible outcome" for her. Wilson testified that he has instituted changes so that client payments made through Cash App are deposited directly into his client trust account. He also stated that while he accepted a wide variety of cases earlier in his practice, in the last two years, he has limited his practice to estate planning.

{¶ 25} Relator argued that Wilson should be suspended from the practice of law for 18 months with 12 months stayed, and he offered cases in support of that recommendation. But the board noted that relator's recommendation relied in part on three alleged rule violations that were ultimately dismissed by the hearing panel. Relying on *Mahoning Cty. Bar Assn. v. Malvasi*, 2015-Ohio-2361, *Columbus Bar Assn. v. Kluesener*, 2017-Ohio-4417, and *Columbus Bar Assn. v. McCarty*, 2024-Ohio-4940, the board recommends that we suspend Wilson from the practice of law in Ohio for six months with the suspension stayed in its entirety on the conditions that he engage in no further misconduct and complete a one-year term of monitored probation in accordance with Gov.Bar R. V(21).

{¶ 26} In *Malvasi*, the attorney accepted a $2,500 retainer from a couple to pursue a civil action against the seller of their home and the realtor involved in the transaction. Malvasi neglected the clients' legal matter for nearly a year, failed to deposit their retainer into his client trust account, failed to keep the clients reasonably informed about the status of their matter, and failed to promptly comply

with their reasonable requests for information. He never filed the clients' complaint.

{¶ 27} No aggravating factors were present in *Malvasi*, but mitigating factors consisted of his clean disciplinary record, lack of a dishonest or selfish motive, good-faith effort to make restitution and rectify the consequences of his misconduct, cooperation in the disciplinary proceedings, and good character and reputation. *Id*. at ¶ 6. We also noted that Malvasi had suffered from health problems and had primary responsibility for his elderly mother during his misconduct. *Id*. We suspended Malvasi for six months, stayed in its entirety on the condition that he commit no further misconduct, and required him to serve a one-year term of monitored probation and attend a law-office-management seminar. *Id.* at ¶ 10.

{¶ 28} In *Kluesener*, the attorney neglected a client's products-liability matter, failed to provide competent representation, failed to keep the client reasonably informed about the status of the matter, and failed to comply with discovery requests, misconduct that contributed to the trial court's dismissal of the client's lawsuit with prejudice. Kluesener also failed to protect his client's interests when withdrawing from the representation. No aggravating factors were present. *Kluesener*, 2017-Ohio-4417, at ¶ 10. However, mitigating factors consisted of Kluesener's clean disciplinary record, his lack of a dishonest or selfish motive, his cooperation in the disciplinary proceedings, his good character and reputation, and his full acknowledgement of his misconduct. *Id.* We suspended Kluesener from the practice of law for six months and stayed the entire suspension on the condition that he engage in no further misconduct. *Id.* at ¶ 14.

{¶ 29} In *McCarty*, the attorney abandoned his private practice without notice after agreeing to represent a client in the administration of her mother's estate, and he failed to take reasonably practicable steps to protect the client's interests. During the resulting disciplinary investigation, the relator discovered that

McCarty had not deposited the fees paid by that client and one other into his client trust account, that he had commingled personal and client funds in both his personal and client trust accounts, and that he had failed to promptly deliver refunded overpayments of court and other costs to 20 clients. Two aggravating factors were present: a pattern of misconduct and multiple offenses. *McCarty*, 2024-Ohio-4940, at ¶ 22. As for mitigating factors, McCarty had a clean disciplinary record, had not acted with a dishonest or selfish motive, made timely restitution to his clients, and exhibited a cooperative attitude toward the disciplinary proceedings. *Id.* There too, we imposed a stayed six-month suspension. *Id.* at ¶ 35.

{¶ 30} We acknowledge the two aggravating factors present in this case—Wilson's multiple offenses and that his conduct caused significant harm to Stewart, who was a vulnerable client—and that the mitigating factors are not as numerous as those present in *Malvasi*, *Kluesener*, and *McCarty*. However, we find compelling the mitigating factors present here—particularly Wilson's qualifying mental disorder, which was exacerbated by the deaths of two close family members and his own divorce proceedings, and his acceptance of responsibility for his misconduct. We therefore agree that the appropriate sanction in this case is a six-month suspension stayed in its entirety on the conditions recommended by the board.

## CONCLUSION

{¶ 31} Accordingly, Darnell Maurice Wilson is suspended from the practice of law in Ohio for six months with the entire suspension stayed on the conditions that he commit no further misconduct and serve a one-year period of monitored probation in accordance with Gov.Bar R. V(21). If Wilson fails to comply with any condition of the stay, the stay will be lifted and he will serve the full six-month suspension. Costs are taxed to Wilson.

Judgment accordingly.

_____

KENNEDY, C.J., joined by FISCHER and HUFFMAN, JJ., concurring in part and dissenting in part.

{¶ 32} I agree with the court's judgment in all respects except the condition that respondent, Darnell Maurice Wilson, serve a one-year term of monitored probation under Gov.Bar R. V(21). In my view, this nonspecific condition gives little guidance to Wilson or his monitoring attorney and does not promote public confidence that the underlying causes of Wilson's misconduct will be addressed.

{¶ 33} Gov.Bar R. V(12)(A) provides that "[a]ny judicial officer or attorney found guilty of misconduct shall be disciplined." And Gov.Bar R. V(12)(A)(4) provides that in conjunction with an order of suspension imposed under Gov.Bar R. V(12)(A)(3), this court may impose "[p]robation for a period of time upon conditions [that this court] determines." Those conditions not only define the duties of the monitoring attorney but also set the expectations this court has of Wilson.

{¶ 34} Gov.Bar R. V(21) sets forth the basic procedures for imposing probation on an attorney in a disciplinary matter, and the conditions of the monitored-probation term are essential to the scheme. In my view,

[a] term of probation should have sufficient conditions tied to a respondent's violations to protect the public from further violations of the Rules of Professional Conduct. Supervisory activities should be tailored to benefit a respondent. It is critical for the long-term success of a respondent who has been disciplined that each case be evaluated on the facts and circumstances of the misconduct. Much like a trial-court judge who must impose individualized sentencing for each defendant, this court should impose individualized conditions for each term of monitored probation.

*Disciplinary Counsel v. Halligan*, 2019-Ohio-3748, ¶ 45, (Kennedy, J., concurring in part and dissenting in part).

**{¶ 35}** Therefore, in this case, I would impose the following specific conditions for the term of Wilson's probation: (1) that he participate in monthly meetings with the monitoring attorney, (2) that he provide the monitoring attorney with complete access to his Cash App or payment platform, the firm's operating account, and the client trust account, including all records required to be maintained under Prof.Cond.R. 1.15, (3) that he maintain an active-case list or a docketing system and provide the inventory of active cases and the related files to the monitoring attorney for review, and (4) that he complete three hours of continuing legal education ("CLE") focused on law-office management and three hours of CLE focused on client-trust-account management, in addition to the requirements of Gov.Bar R. X.

**{¶ 36}** Because the majority imposes a one-year term of monitored probation under Gov.Bar R. V(21) without defining any conditions for the term of Wilson's probation, I concur in part and dissent in part.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Ryan N. Sander, Assistant Disciplinary Counsel, for relator.

Darnell Maurice Wilson, pro se.

_____